JAMES EPPS #91742
Southern Desert Correctional Center
Name
SDCC / POB 208
Prison Number
Indian Springs NV 89070-0208
Place of Confinement

```
_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED C
          COUNSEL/PARTIES OF RECORD

            FEB 0 2 2022

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY: _____ DEPUT
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JAMES EPPS                              )
_____, Petitioner,  )
(Full Name)                            )
            vs.                        )  CASE NO.   2:22-cv-00204-GMN-VCF
DIRECTOR NEVADA DEPT                   )
OF CORRECTIONS, et. al.                )
_____, Respondent,          )  ✳EVIDENTIARY HEARING REQUESTED✳
(Name of Warden, Superintendent, jailor or  )
authorized person having custody of petitioner)  )  PETITION FOR A
                                       )  WRIT OF HABEAS CORPUS
            and                        )  PURSUANT TO 28 U.S.C. § 2254
                                       )  BY A PERSON IN STATE CUSTODY
The Attorney General of the State of Nevada  )  (NOT SENTENCED TO DEATH)

### ✳ APPOINTMENT OF COUNSEL REQUESTED ✳

1. Name and location of court, and name of judge, that entered the judgment of conviction you are challenging: 8th Judicial District Court / 200 Lewis Ave / Las Vegas NV 89155 Clark County NV / Judge DOUGLAS W. HERNDON.

2. Full date judgment of conviction was entered: 10 / 12 / 16 . (month/day/year)

3. Did you appeal the conviction? ✔ Yes ___ No. Date appeal decided: 3 / 14 / 18.
   ✳Remittitur filed 10-18-19

4. Did you file a petition for post-conviction relief or petition for habeas corpus in the state court?
   ✔ Yes ___ No. If yes, name the court and date the petition was filed: Nevada Supreme Court [NSC]    7 / 21 / 20 . Did you appeal from the denial of the petition for post-conviction relief or petition for writ of habeas corpus? ✔ Yes ___ No. Date the appeal was decided: 4 / 12 / 21 . Have all the grounds stated in this petition been presented to the state supreme court? ✔ Yes ___ No. If no, which grounds have not? ✳N/A
   ✳Remittitur filed 5-14-21 ( ✳N/A .

5. Date you are mailing (or handing to correctional officer) this petition to this court: 1 / 26 / 22 . (WED)
   **Attach to this petition a copy of all state court written decisions regarding this conviction.**

T] NV Supreme Court [NSC] Direct Appeal Case # 71727 : 3-14-18 Order (2 PGS)
Denying Petitioners Direct Appeal on PG _____ (infra)

### ✳ PG 1 of 31 ✳

6.  Is this the first federal petition for writ of habeas corpus challenging this conviction? ✓ Yes
    ___ No.   If no, what was the prior case number ? __ ✱ NIA __. And in what court was

the   prior action filed? _____ ✱ NIA _____

    Was the prior action NA denied on the merits or NA dismissed for procedural reasons (check
    one).  Date of decision: NA / NA / NA .  Are any of the issues in this petition raised in the
    prior petition? NA Yes NA No.   If the prior case was denied on the merits, has the Ninth
    Circuit Court of Appeals given you permission to file this successive petition? NA Yes NA No.

7.  Do you have any petition, application, motion or appeal (or by any other means) now pending in
    any court regarding the conviction that you are challenging in this action? NA Yes NA No.
    If yes, state the name of the court and the nature of the proceedings: __ ✱ NIA __
    _____ ✱NIA _____

8.  Case number of the judgment of conviction being challenged: C-12-285595-1 .

9.  Length and terms of sentence(s): ✱ AGGREGATED SENTENCE 18 YRS to LIFE
    1) 10 YRS to Life + 2) 8 YRS to 20 YRS [Consecutive]

10. Start date and projected release date: 9-28-12 to 9-28-30 ✱ 1st Parole Eligibility Date

11. What was (were) the offense(s) for which you were convicted: 1) 2nd Degree Murder
    With Use Of A Deadly Weapon ✱ KNIFE .

12. What was your plea? ___ Guilty ✓ Not Guilty ___ Nolo Contendere. If you pleaded guilty
    or nolo contendere pursuant to a plea bargain, state the terms and conditions of the agreement:
    _____ ✱ NIA _____

13. Who was the attorney that represented you in the proceedings in state court?  Identify whether
    the attorney was appointed, retained, or whether you represented yourself *pro se* (without counsel).

| | Name of Attorney | Appointed | Retained | *Pro se* |
|---|---|---|---|---|
| arraignment and plea | | ✓ | ___ | ___ |
| trial/guilty plea | | ✓ | ___ | ___ |
| sentencing | | ✓ | ___ | ___ |
| direct appeal | GREGORY E. COYER, ESQ | ✓ | ___ | ___ |
| 1st post-conviction petition | PRO-SE | ___ | ___ | ✓ |
| appeal from post conviction | PRO-SE | ___ | ___ | ✓ |
| 2nd post-conviction petition | ✱ NIA | NIA | NIA | NIA |
| appeal from 2nd post-conviction | ✱NIA | NIA | NIA | NIA |

## STATEMENT OF THE CASE

This direct appeal is from a district court judgment of conviction entered pursuant to a jury verdict. On November 19, 2012, Appellant James Eric Epps (hereinafter "Mr. Epps" or "Epps") was charged via Information in the Eighth Judicial District Court, Clark County, State of Nevada. Mr. Epps faced a single count – Murder With Use Of A Deadly Weapon (Category A Felony – NRS 200.010, 200.030, 193.165) (*see* Appellant's Appendix "AA" bates numbers AA0001-AA0003).

Mr. Epps' case took a rather lengthy path from arraignment to jury trial. Along the way, Mr. Epps had three different court-appointed attorneys. After multiple delays and continuances, Epps' jury trial commenced August 1, 2016.

Epps' jury trial lasted seven (7) court days. On August 10, 2016, the jurors convicted Epps of Second Degree Murder With Use Of A Deadly Weapon (AA0864). At sentencing, Epps received a term of imprisonment in the Nevada Department of Corrections for life with parole eligibility after ten (10) years, plus a consecutive term of eight (8) to twenty (20) years (AA0865).

The district court's Judgment of Conviction was filed on October 12, 2016 (AA0865). Notice of Appeal was timely filed on November 9, 2016 (AA0867). This direct appeal was docketed in this Court on November 16, 2016. Appellant's Opening Brief and Appendix (Volumes 1-4) are hereby submitted for this Court's consideration.

## STATEMENT OF FACTS

On September 17, 2012, William Fetting died from a single stab wound to the chest. The knife blade entered Fetting's body in the central midline area near where the rib cage meets the breastbone. (AA0183 – AA0184). Anatomically, as the ribs approach the breast bone, near the middle of the chest, their physical composition changes from hard bone to softer cartilage. (AA0188). Remarkably, the knife blade entered Fetting's body at just the right location such that it was able to perforate the skin, enter and pass through the cartilage of the rib cage, avoiding the surrounding bony structures, and ultimately penetrate the heart. (AA0189 – AA0193). The single stab wound was uniquely unsuitable for any life-saving measures and therefore unavoidably fatal. (AA0200). At the moment Fetting suffered this fatal stab wound, the knife was undeniably in the hand of James Eric Epps.

Mr. Epps was arrested on September 28, 2012, eleven days after Fetting's death. As he was being arrested for murder, Epps put up no resistance (AA0659 – AA0660). After his arrest, Epps was subjected to a custodial interrogation. (AA0635). He voluntarily answered every question posed to him by the detectives; never becoming combative or argumentative (AA0660). Epps' behavior during the police interrogation was "at times very remorseful, at times emotional, other times very straightforward" (AA0661). At no time during the interrogation did Epps claim that somebody else stabbed Fetting (AA0658). At no time did he deny having a knife in his hand

(AA0664 – AA0665). Epps simply maintained, steadfast throughout a two hour interrogation, that he had stabbed Fetting accidentally and unintentionally (AA0665).

The State's trial strategy appeared to be aimed at simply refuting Epps' four-year old explanation that Fetting had been accidentally and unintentionally stabbed. Multiple bystanders witnessed an altercation on the night William Fetting died. Despite the sworn testimonies of several eyewitnesses, the precise details of the actual stabbing incident remain either unclear or inconsistent.

<u>The Defendant's Accident Defense</u>

James Epps took the stand and testified in his own defense. Epps explained to the jury that when the fighting broke out, it began with Larry Hill punching William Fetting (AA0737). After a few seconds of Hill and William fighting each other, Gary made a beeline toward the fight to help his son. Epps tried to "fend him off" or block him from getting involved so that the fight would remain one-on-one (AA0739 – AA0740).

At some point, Hill became aware of the fact that Gary was trying to engage himself into the fight to help his son (AA0741 – AA0742). It was at this point that Hill and Gary began engaging each other in combat, grabbing and tussling. While Hill fought with Gary, William appeared to be off to the side trying to regain his composure (AA0742). Epps, meanwhile, was focusing his attention on the fight between Hill and Gary and not on William (AA0743).

While Epps focused on Hill and Gary's fight, he was still holding the knife in his hand from when he took it off his belt earlier in the evening (AA0722 – AA0725, AA0744). Suddenly, Epps saw a white flash coming from his left side. It appeared to Epps that something was coming at him. Out of reaction, Epps turned toward the direction of the flash (AA0744). The flash of white movement turned out to be William. Epps did not realize what it was until they had come together and made contact with one another (AA0745). William "didn't say ah, he didn't fall down right there, he kept running. He ran right, you know - - it's like - - it's like his body and my hand came together but he kept  - - he kept - - you know, he kept running." (AA0745).

Four years after his arrest and custodial interrogation, Epps steadfastly maintained that he simply reacted out of instinct. Epps did not know the flash in the corner of his eye was William Fetting, and he had no intention of stabbing him. Epps could not offer an explanation for when or how the knife became opened (AA0747, AA0750). Epps explained his concern regarding whether or not the knife depicted in the photographs was the actual knife involved in the stabbing (AA0747 – AA0749).

Epps further testified that he did in fact return a knife to the home where Michael Pace, Meagan Toulouse, and Daniel Ruffo stayed together (AA0751 – AA0752). At the house, Epps did not wash off the knife; he only washed his hands (AA0753).

Epps told the jury that he was one hundred percent truthful with the detectives when they questioned him about the incident (AA0756 – AA0757). Asked if he had ever denied stabbing William Fetting, Epps' responded: "Never denied it one time.  Was accident man.  Accident." (AA0757).  When asked point blank "what is the truth here today?" Epps plainly stated, "I had no intent on stabbing William.  It was accident.  I promise you was accident" (AA0758).

The second and final defense witness was Dr. Katherine Raven.  Dr. Raven is a medical doctor with expertise in forensic pathology (AA0841).  Dr. Raven provided expert testimony to support a key component of Epps' defense.  Dr. Raven has performed approximately 4,500 to 5,000 autopsies in her career (AA0841).  Dr. Raven reviewed the coroner's autopsy report and photographs, and a transcript of Epps' custodial interrogation from 2012 (AA0842).  Based upon her expert knowledge and qualifications, Dr. Raven was able to compare the pathological findings from William Fetting's autopsy and compare those with the factual scenario Epps' told the police about how William suffered the fatal stabbing.  It was Dr. Raven's opinion that she could not rule out the scenario that if William charged at Epps with sufficient force, and Epps had a firm grip on the knife, that the fatal stab wound could have occurred in such a manner. (AA0845).

## ISSUES PRESENTED FOR REVIEW

**THE TRIAL COURT ERRED BY IMPROPERLY DENYING DEFENDANT HIS RIGHT TO REPRESENT HIMSELF** _____ PG

## CLAIM 1A :

### THE TRIAL COURT ERRED BY IMPROPERLY DENYING THE DEFENDANT HIS RIGHT TO REPRESENT HIMSELF

On July 19, 2016, two weeks before the start of Mr. Epps' jury trial, the district court committed a crucial error by improperly denying Epps' request to exercise his constitutional right to represent himself.[3] The district court's denial of this important constitutional right was based solely on timeliness grounds. The court's decision to dispose of Epps' *Faretta* request was made pursuant to a wholly inadequate fact-finding process and was an abuse of the district court's discretion. This single error mandates reversal.

### (a) Relevant Procedural History

Mr. Epps was arrested for the killing of William Fetting on September 28, 2012. In Las Vegas Justice Court, Epps was provided court-appointed counsel after both the Public Defender and Special Public Defender discovered conflicts of interest. Epps' appointed counsel, William Wolfbrandt, Jr., handled Epps' preliminary hearing, which was held on

---

[3] In 1975, the United States Supreme Court held that the Sixth Amendment right to counsel included the right to represent oneself. <u>Faretta v. California</u>, 422 U.S. 806, 95 S.Ct. 2525 (1975). The Nevada Constitution also guarantees a defendant the right to self-representation. <u>Hymon v. State</u>, 121 Nev. 200, 212, 111 P.3d 1092, 1101 (2005).

November 8, 2012. Epps was bound over to district court on a single count of open murder, and scheduled for initial arraignment on November 27, 2012.

Before Epps could even be arraigned in district court, he sought to have Mr. Wolfbrandt dismissed and to have alternate counsel appointed. Epps provided a lengthy document supporting his request which was dated November 29, 2012 (AA0008 – AA0019). Honoring his client's request, Mr. Wolfbrandt post-poned Epps' arraignment and filed a formal Motion to Withdrawal as Attorney, attaching Epps' missive as supporting documentation (AA0004).

On December 13, 2012, the district court granted the request for new counsel (AA0020 – AA0024). Epps' received a new appointed attorney, Monti Levy. Ms. Levy continued to represent Epps until August of 2014. On August 21, 2014, Ms. Levy filed a Motion to Withdraw as Attorney of Record (AA0031 – AA0034). As a basis to withdraw, Ms. Levy's motion noted deterioration in the attorney/client relationship and a complete breakdown in attorney/client communication (AA0034).

The district court heard Ms. Levy's motion on September 2, 2014 (AA0035). At the hearing, Mr. Epps agreed that a breakdown had occurred, but he expressed concern that responsibility for the breakdown should not fall on him (AA0036). The district court assured Epps that it was only

considering that Ms. Levy had requested to withdraw (AA0036 – AA0037). Epps then attempted to explain that there were "things that need to be done . . . ." The district court interjected such that Epps could not finish his sentence and proceeded to grant Ms. Levy's motion (AA0037).

A new attorney, Frank Kocka, was appointed to take over Epps' representation (AA0038). At the time of Ms. Levy's withdrawal, Epps' jury trial was scheduled for March 16, 2015, more than seven months away. Mr. Kocka represented Epps for the next two years, as the case saw numerous continuances for a variety of reasons.

As discussed below, it appears from the record that sometime between May and June of 2016, Mr. Epps made the decision that he should represent himself in order to prepare his defense as he saw fit. Although Mr. Epps was on his third court-appointed attorney, nothing about the withdrawals of the two prior attorneys suggested that Epps had any desire for self-representation prior to the May/June 2016 timeframe. Rather, the preceding record merely suggested that Epps had disagreements with his appointed counsel on how to best prepare his defense.

On June 20, 2016, Mr. Epps – who had remained in the Clark County Detention Center since his arrest date – hand wrote a document entitled "Motion for 'Faretta' Hearing & Motion to Dismiss Counsel" (AA0063 –

AA0072).  The motion was mailed from the jail to the court, received by the Clerk of the Court on June 22, 2016, and electronically filed on June 23, 2016 (AA0063).  The motion appears to have been assigned a hearing date of July 14, 2016.  At the time of Epps' *Faretta* request, his jury trial was scheduled for August 1, 2016.

Epps' *Faretta* motion comprised eight pages of points and authorities, which specifically detailed the reasons for his request to represent himself.  It appears that one of Epps' primary frustrations was the delayed process of getting his expert witnesses together.  According to Epps' motion, he had requested his attorney bring in certain expert witnesses "over a year ago" (AA0065).

Through no fault of his own, Epps' *Faretta* request, submitted in late June, was not entertained by the district court until July 19, 2016.  On that date, the district court denied Epps' *Faretta* request as untimely. (AA0077, AA0085).  The district court informed Epps that "the minutes will reflect that your request is untimely because you admitted in open court that you cannot be prepared [by August 1, 2016].  This trial's been continued so many times that that's why I've determined your motion is untimely and that's a basis for me to deny your motion." (AA0086).  The timeliness of Epps' *Faretta* request was the sole basis upon which the district court based its denial.

### (b) Standard of Review

The precise issue before this Court is whether the district court erred by denying Epps' *Faretta* request on the sole basis of timeliness. It appears that the standard of review utilized in this Court's previous decisions is 'abuse of discretion' review. However, Appellant submits that the more prudent approach would be for this Court to apply de novo review to the instant issue.

It is well-established that when a defendant elects to waive his right to counsel and represent himself, the validity of the *Faretta* waiver is considered a mixed question of law and fact, and the record as a whole (including any canvass conducted by the court) is reviewed de novo. Hooks v. State, 124 Nev. 48, 54-55, 176 P.3d 1081, 1084-85 (2008); United States v. Erskine, 355 F.3d 1161, (9th Cir. 2004). It is not abundantly clear why the validity of a *Faretta* waiver should be subject to one standard of review while the denial of a *Faretta* request should be governed by another, less deferential standard. After all, both rights (to have counsel, and to represent one-self) are rooted in the same constitutional underpinnings. It is perhaps worth noting that in federal court, the Ninth Circuit has not yet clarified whether the denial of a *Faretta* request is reviewed de novo or for abuse of discretion. United States v. Kaczynski, 239 F.3d 1108, 1116 (9th Cir. 2001) (*citing* United States v. George, 56 F.3d 1078, 1084 (9th Cir. 1995)).

A broad view of the Nevada Supreme Court's modern-day analysis of the timeliness of a *Faretta* request appears, in many ways, to treat the issue as a mixed question of law and fact, which might be more effectively analyzed under a de novo review. However, the specific language of this Court's opinions on the issue admittedly suggests that the Court still reviews these issues for abuse of discretion. *See* Gallego v. State, 117 Nev. 348, 23 P.3d 227 (2001), Vanisi v. State, 117 Nev. 330, 22 P.3d 1164 (2001), *and* Lyons v. State, 106 Nev. 438, 443, 796 P.2d 210, 213 (1990) (discussed *infra*).

An improper denial of the right of self-representation is per se reversible, never harmless, error. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S. Ct. 944 (1984)); Hymon v. State, 121 Nev. at 212 (2005); Gallego v. State, 117 Nev. at 356-57 (2001); Vanisi v. State, 117 Nev. at 338. Given the constitutional magnitude of the accused's *Faretta* rights and the need for automatic reversal when those rights are denied, it is respectfully submitted that this Court should be treating *Faretta* request denials as mixed questions of law and fact and applying de novo review. Regardless of which standard this Court applies, Epps maintains that his request to represent himself was improperly denied by the district court, mandating a reversal of his conviction.

### (c) Law and Analysis

1. APPLICABLE LEGAL FRAMEWORK

Prior to 1990 (when the Nevada Supreme Court decided the *Lyons* case), this Court had a bright-line rule respecting the timeliness of a request for self-representation.  Under Baker v. State, 97 Nev. 634, 636, 637 P.2d 1217, 1218 (1981), a motion to self-represent was *per se* timely if made prior to the jury being sworn in. Id.  The denial of such a request on the grounds of timeliness alone deprived the defendant of his Sixth Amendment right to conduct his own defense. Id.  The *Baker* rule meant that a timely motion to self-represent could only be procedurally rejected upon an affirmative showing that the defendant's motion was made merely to obstruct or delay the orderly process of the criminal justice system.

In *Lyons*, this Court took the opportunity to review its position regarding when the right to represent oneself must be asserted. Lyons v. State, 106 Nev. at 443 (1990).  Lyons, on the first day of trial, made a request to continue for new counsel or alternatively to represent himself.  The district court denied the request because the case was especially complex and the request was deemed untimely.  In affirming Lyons' conviction, this Court substantially altered its 'timeliness' jurisprudence.  Noting that the U.S. Supreme Court has not specifically addressed the element of timeliness of a request for self-representation, this Court identified two main views on the issue. Id. at 445.

First, some courts hold that a request for self-representation is timely as a matter of law so long as it is made before the swearing of the jury. Other courts hold that a request may be denied as untimely where the request is not made a reasonable time before trial and there is no good cause justifying the lateness of the request. *See especially* <u>People v. Windham</u>, 560 P.2d 1187 (Cal. 1977).

. . .

In *Baker*, we adopted the former view, holding that a request for self-representation made before the swearing of the jury is timely as a matter of law and may not be denied absent a showing of dilatory intent or some other ground for denial. We hereby adopt the view stated by *Windham* and overrule our *Baker* decision on this point.

<u>Lyons v. State</u>, 106 Nev. at 445 (1990) (internal citations omitted).

This Court's rejection of the bright line *Baker* rule in favor of the *Windham* analysis broadened the discretion of the district court by creating three somewhat different standards to evaluate the timeliness of a *Faretta* request.

First, if the request is made well before trial, the right to self-representation is timely as a matter of law and may not be denied absent a justification other than timeliness. Second, if the request is made shortly before or on the day of trial, the court may, in its discretion, deny the request as untimely unless there is reasonable cause to justify the lateness of the request. Third, if the request is made during trial, the court has a larger measure of discretion to grant or deny the request. <u>Id</u>.

In *Lyons*, this Court treated the defendant's day-of-trial *Faretta* request as concerning the second of the three described scenarios. <u>Id</u>.

In finding Lyons' request untimely, this Court went on to reason that a request for self-representation may be denied on timeliness grounds alone if

the request is not made within a reasonable time before trial and there is no showing of reasonable cause for the lateness of the request. Id. at 445-446. If it is clear that the request comes early enough to allow the defendant to prepare for trial without need for a continuance, the request should be deemed timely. If there exists reasonable cause to justify a late request, the request must be granted. Id. at 446. If there is no such reasonable cause, the court may deny a late request; there need not be a specific finding of dilatory intent. Id. This Court additionally noted: "[t]he district courts should set forth in the record the reasons for denying a defendant's request to represent himself." Id.

It must be highlighted that this Court specifically stressed that the *Lyons* decision "must not be used to limit the exercise of the fundamental constitutional right of self-representation." Id. This Court left to the discretion of the district court the decision to grant or deny late *Faretta* requests, while adding, "we encourage district courts to accommodate defendants' requests where this can be done without undue disruption or delay." Id.

The application of the *Lyons* framework to the facts of the instant case demonstrates why Epps' conviction must be reversed.

### 2. APPLICATION OF FACTS AND ANALYSIS OF LAW

(A)   Epps' *Faretta* Request was Timely as a Matter of Law

Mr. Epps' request to represent himself, which was made "well before trial," was timely as a matter of law, and therefore could "not be denied absent

11  a justification other than timeliness." <u>Lyons</u> at 445. The record is clear that at

12  the latest, Epps requested to represent himself on June 20, 2016. Epps made

13
    his request the only way an inmate of the Clark County Detention Center
14

15  possibly can; he told his attorney and even attempted to file his own motion.

16  At the time of Epps request to self-represent, his trial date was August 1,

17
    2016, more than a month away.
18

19        In <u>Vanisi v. State</u>, 117 Nev. 330, 22 P.3d 1164 (2001), the defendant's

20  motion to represent himself was deemed timely. Vanisi's motion (much like

21
    Epps' motion) was filed "approximately one month before" his scheduled trial
22

date. Id. at 339. [4]    Thus, without even analyzing the details of why Epps' request occurred when it did, it should be deemed timely based on precedent.

Perhaps the most compelling case supporting the timeliness of Epps' *Faretta* request is the *Faretta* decision itself.  In *Faretta*, the U.S. Supreme Court noted that the defendant had asked to proceed pro se "weeks before trial" and then held that "in forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Faretta v. California, 422 U.S. 806, 835-36, 95 S. Ct. 2525 (1975) (emphasis added). It is axiomatic that the timing element is essential to the U.S. Supreme Court's holding in *Faretta*.  The Ninth Circuit recognizes this principle and has held that after *Faretta*, it is clearly established that a request to represent oneself is timely if made "weeks before trial." Moore v. Calderon, 108 F.3d 261, 265 (9th Cir. 1997). [5]

---

[4]    In Vanisi, although the defendant's motion was timely, his request to represent himself was ultimately denied because it was determined that Vanisi harbored a specific intent to delay the proceedings. Id.

[5]    The Ninth Circuit recently reaffirmed that "[w]hat we said nearly two decades ago is still true today: 'the only Supreme Court decision to discuss the timeliness of a request to proceed pro se is the *Faretta* decision itself.'"

Epps' *Faretta* request was made sufficiently far in advance of trial to be considered timely under the applicable law. As such, it was timely as a matter of law and could not be denied absent some justification other than timeliness. Lyons at 445. No rational argument can refute the fact that the district court denied Epps' *Faretta* request solely on timeliness grounds. This critical error is per se reversible because it improperly deprived Epps of his right to self-representation under the Sixth Amendment.

(B)    The District Court Failed to Inquire into Epps' *Faretta* Request

Even if this Court disagrees that Epps' *Faretta* motion was timely as a matter of law, the district court still abused its discretion by denying the request without making a proper inquiry into Epps' purpose behind the request, and without determining whether there was reasonable cause to justify an arguably late request. At the *Faretta* hearing, Epps' attempted to explain to the district court that the purpose behind his request was related to expert witnesses and DNA evidence:

> THE DEFENDANT:
> My issue is these experts, okay. They're here – they're brought in to do one thing or another, okay, based on their expertise in their field. And a couple of DNA tests that were in question that the State brought forth the results that

Burton v. Davis, 816 F.3d 1132, 1141 (9th Cir. 2016), *quoting* Moore v. Calderon, 108 F.3d 261, 265 (9th Cir. 1997).

1       supposedly had my DNA on them, I asked my attorney – I
2       want those challenged.  I want those challenged.  This is a
        long time ago.  I wanted those challenged.
3       (AA0080 – AA0081).

4

5  Although it is not entirely clear what Epps' sought due to the court's lack of

6  inquiry, it appears that Epps wanted an independent DNA expert to consult

7  and/or testify for the defense regarding some DNA evidence.

8

9      The evidence presented at Epps' jury trial demonstrates the importance

10  of DNA evidence to his theory of defense.  Since his interrogation in 2012,

11

12  Epps has questioned whether the police recovered the correct knife actually

13  held by Epps when he accidentally stabbed William Fetting.  To support his

14  accident defense, Epps needed to demonstrate to the jury that the knife he had

15

16  in his hand opened with the simple push of a button, and could be opened

17  inadvertently and unintentionally.  Therefore, whether or not Epps DNA was

18

19  on the knife in evidence was hugely relevant.  If the State was presenting the

20  wrong knife to the jury, then it would have severely prejudiced Epps' ability

21  to present his defense.

22

23      For these reasons, Epps' desire for an independent DNA expert was

24  perfectly reasonable and his request to his attorney to challenge the DNA was

25  equally reasonable.  Epps' certainly could not rely upon the State's DNA

26

27  expert, who prejudicially presented testimony that Epps' could not be

28  excluded from the mixture profile. *See* <u>Rodriguez v. State</u>, 128 Nev. 155, 157,

1  273 P.3d 845, 847 (2012) (holding that "so long as it is relevant, DNA

nonexclusion evidence is admissible because any danger of unfair prejudice or of misleading the jury is substantially outweighed by the defendant's ability to cross-examine *or offer expert witness evidence as to probative value*")

Epps pleaded to the court – quite reasonably – that "I'm not accused of stealing something from Walmart. This is a murder case. You know what I mean, I want everything followed to the tee just like any other Defendant would." (AA0081). Unfortunately, rather than properly inquire into the purpose behind Epps' *Faretta* request, the district court interjected while Epps was trying to explain that his case was four years old and very little had been done in support of his defense (AA0081 – AA0082).

To complicate matters at the *Faretta* hearing, defense counsel made the following record pertaining to Epps' request to self-represent:

> DEFENSE COUNSEL:
> . . . .
> The DNA that Mr. Epps wants me to challenge is DNA that's on his clothing. There is an issue of a DNA report on the actual weapon, whether it was the correct weapon or not, that is actually favorable to Mr. Epps. I made the decision not to challenge that because the DNA evidence with regard to the actual weapon is favorable to him.
>
> What he has asked me to do, and I think part of the impasse that we're at right now, is he's asked me to file motions . . .

> which are without merit. I don't want to go into what they
> are, Your Honor, because it may prejudice him at this point.
> . . .
> If he has an issue with that, if he wants me removed from
> the case for those kind of decisions made in the case, Judge,
> remove me. I've explained to him that . . . if he wants to
> proceed with *Faretta* he has every right to do so and
> represent himself. If he wants to bring those motions;
> absolutely. I also said that I'll be ready to go as a standby
> on the trial date that we're ready to go on, Judge.
> (AA0083 – AA0084).

The district court then questioned whether Epps would be ready to go to trial

in thirteen days if he represented himself. Epps responded:

> THE DEFENDANT: Well, with some of my issues based
> in my claims here, obviously not, because there's so much
> extensive research, things I need to get done, witnesses need
> to be interviewed, DNA stuff that needs to be challenged.
> . . .
> Thirteen days is not enough time. Obviously, three
> attorneys have had this case for four years and it's still not
> thoroughly investigated.
> (AA0085).

The district court then immediately denied the *Faretta* request as untimely.

(AA0085). The court later informed Epps that "the minutes will reflect that

your request is untimely because you admitted in open court that you cannot

be prepared. This trial's been continued so many times that that's why I've

determined your motion is untimely and that's a basis for me to deny your

motion." (AA0086).

Due to the district court's failure to make a proper inquiry into the purpose behind Epps' *Faretta* request, this Court is unfortunately left with a confusing record. Depending on the source – Epps or his attorney – the record suggests that Epps' requested to represent himself for the purpose of either (a) challenging some DNA evidence in support of his defense; or (b) filing frivolous motions that his appointed counsel refused to file. The district court therefore abused its discretion in failing to conduct a proper inquiry into the purpose behind the request and failing to clearly state in the record an adequate basis for denying a *Faretta* request.

(C)    Reasonable Cause Exists to Justify an Arguably Late Request

The district court's deficient inquiry into the purpose behind Epps' *Faretta* request also failed to determine whether there was reasonable cause to justify an arguably late request. Had the district court not abused its discretion, it would have clearly seen that Epps has more than reasonable cause.

If reasonable cause exists, then the district court **must** not deny the request. Lyons v. State, 106 Nev. at 445 (emphasis added). Here, Epps informed that district court that he had requested "a long time ago" that certain DNA evidence be challenged. Yet the evidence was apparently not being challenged simply because Epps and his attorney disagreed over the merit of conducting the challenge. Most critically, Epps had good cause to believe that his requests were being handled properly by his attorney. This

reasonable, but mistaken, belief – evidenced by the existing record – justifies Epps' arguably late request to represent himself.

On October 21, 2015, defense counsel filed a motion to continue trial (AA0040). The motion indicated that within the past month, "Epps has raised two issues with counsel for the first time which counsel feels needs to be further investigated and resolved prior to trial" (AA0042). The motion further stated that "if the information recently developed is valid, counsel will have to pursue the assistance and possible testimony of an expert in this case." (AA0043). On October 27, 2015, pursuant to the defense motion, Epps' trial was continued for the fifth time. Prior to the court granting the continuance, Epps' defense counsel stated on the record that he was still working on the issues raised by Epps that warranted a little more research, as indicated in the motion to continue (AA0045 – AA0046). The representations of Epps' attorney would have given Epps good cause to believe that the issues he had raised to his counsel were being appropriately addressed. The court granted the defense continuance and rescheduled Epps' trial to May 23, 2016 (AA0047).

Epps' next court date was March 3, 2016, a status check on trial readiness. (AA0049). At that time, Epps' defense counsel represented to the court that he had met with Epps two days ago and that Epps made several requests (AA0050). One of those specific requests was identified as a request for additional experts (AA0050). Defense counsel further noted that Epps

8  made a number of requests that "if we were to put these into effect we would
9  not be ready for trial at the time." (AA0050).  No further clarification of Epps'
10  requests was made, but defense counsel stated that he had already applied for
11  public funds for experts and was waiting on a reply (AA0051).   The trial
12  readiness hearing was then continued to March 17, 2016. (AA0052).
13

14  On March 17, 2016, Epps' defense counsel represented to the court that
15  he had met with Epps, discussed potential motions, and was planning to file
16  "at least three pretrial motions" (AA0054).[6]  Epps' counsel further asked to
17  re-calendar a previously filed evidence preservation motion that was never
18  ruled on. (AA0054 – AA0055).  Once again, the representations of defense
19  counsel would have given Epps good cause to believe that his defense was
20  coming together as desired.
21
22
23

1  May 19, 2016 was the calendar call for Epps' May 23, 2016 trial date.
2  This date appears from the record to be the first moment in time when Epps
3  would have clearly realized that his defense experts were not coming together
4  as expected.  The unready status of the defense experts was clearly stated in
5  the record and caused Epps' attorney to have to request yet another
6  continuance of his trial date (AA0057 – AA0062).  The court granted the
7  continuance and rescheduled Epps' trial for August 1, 2016.
8
9

26  _____
27  [6]    The district court record does not reflect that any such motions were
28  filed.

Mr. Epps *Faretta* request was submitted June 20, 2016, one month after the May 19, 2016 continuance that would have put him on notice that there were problems getting his defense experts together. At the July 19, 2016 *Faretta* hearing, defense counsel noted that Epps had contacted him "a few weeks ago, requested a *Faretta* canvass." (AA0078). This "few weeks ago" time-frame corresponds perfectly with the time frame in between May 19 and June 20. Thus, even with an incomplete record due to a deficient district court inquiry, it is demonstrably verifiable that Epps requested to represent himself at the earliest practicable time after reasonably concluding that his defense counsel was either unable or unwilling to get his defense experts prepared for trial. This reality clearly constitutes reasonable cause for an arguably late *Faretta* request.

Finally, it should be pointed out that nothing in the record indicates that Epps' *Faretta* request was made for the purpose of delay. Rather, the record indicates that the contrary is true. Epps repeatedly complained that his attorneys were taking too long to challenge the evidence and build his defense. While it is true that Epps went through three court-appointed attorneys during this case, nothing about this fact indicates that Epps had a purpose to delay. His first attorney, Mr. Wolfbrandt, was dismissed before Epps was even arraigned in district court. His second attorney, Ms. Levy, withdrew for a communication breakdown that happened more than seven months prior to a trial setting. Neither of these instances remotely suggests

15  that Epps has ever tried to change counsel (or done anything else) for the

16  purpose of delay.  In fairness, the desire of a defendant to present the defense

17
18  of his choice should not be equated with a desire to delay the administration

19  of justice.

20  ### (d) Conclusion
21
22  In sum, it is clear that the *Lyons* analysis controls the disposition of this

23  issue.  Untimeliness was the only justification given by the district court in

24
25  denying the defendant's *Faretta* request.  Epps respectfully submits that his

26  *Faretta* request was sufficiently far in advance of trial to be considered timely

27  as a matter of law and therefore could not be denied absent some other non-

1   timeliness justification.   Alternatively, even if this Court considers Epps'

2
3   *Faretta* request untimely, the district court still abused its discretion by

4   denying it because Epps can clearly demonstrate reasonable cause justifying

5   the lateness of the request, and there is no evidence of dilatory motive.  The

6
7   district court's error is per se harmful and Epps' conviction must be reversed.

## REQUEST FOR RELIEF :

1] APPOINT COUNSEL on Petitioner's instant 2254 Petition for GOOD CAUSE being: 1) The issue(s) raised are COMPLEX  2) Due to COVID-19, the Prison Inmate Law Library is CLOSED INDEFINITELY with NO ACCESS for Petitioner to legal resources / research materials / services etc necessary to litigate such COMPLEX LEGAL ISSUES in question (legal research computers / caselaw / statutes / legal forms / legal copies etc) 3) Counsel is necessary to AMEND Petitioner's instant 2254 Petition to include ALL ISSUES raised within his State Habeas Corpus Petition, and ;

2] Conduct an EVIDENTIARY HEARING on ALL Petitioner's 2254 ISSUES

**Exhaustion of state court remedies regarding Ground ___1 A___:**

▸   **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

✓ Yes ___ No.  If no, explain why not:   ＊ NIA
                                          ＊ NIA

▸   **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

___ Yes ✓ No.  If no, explain why not:   I raised this claim on Direct Appeal

If yes, name of court: ＊NIA _____ date petition filed NA / NA / NA.

Did you receive an evidentiary hearing? NA Yes NA No.  Did you appeal to the Nevada Supreme

Court? NA Yes NA No.  If no, explain why not:   ＊ NIA
                                                ＊ NIA

If yes, did you raise this issue? NA Yes NA No.  If no, explain why not:   ＊ NIA
                                                                          ＊ NIA

▸   **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

___ Yes ✓ No.  If yes, explain why:   I raised this claim on Direct Appeal

If yes, name of court: ＊ NIA _____ date petition filed NA / NA / NA.

Did you receive an evidentiary hearing? NA Yes NA No.  Did you appeal to the Nevada Supreme

Court? NA Yes NA No.  If no, explain why not:   ＊ NIA
                                                ＊ NIA

If yes, did you raise this issue? NA Yes NA No.  If no, explain why not:   ＊ NIA
                                                                          ＊ NIA

▸   **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)?  ___ Yes ✓ No.  If yes,

explain:   ＊ NIA
           ＊ NIA

§2254-Form
eff. 1/97

－PG ___28___ of ___31___ －

Inmate George Luster #57587

_____
(Name of person who wrote this
complaint if not Plaintiff )

BY: James Epps

_____
(Signature of Plaintiff)

1-26-22 (WE)

_____
(Date)

✳ N/A
_____
(Signature of attorney, if any)

✳ N/A
_____

✳ N/A
_____

✳ N/A
_____
(Attorney's address & telephone number)

## DECLARATION UNDER PENALTY OF PERJURY

I understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Executed at  Southern Desert Corr. Center
SDCC / POB 208
INDIAN SPRINGS NV 89070   on   1-26-22 (WE)
(Location)                          (Date)

James Epps                    # 91742
_____          _____
(Signature)                    (Inmate prison number)

I swear under penalty of perjury (28 USC 1746) that I wrote / prepared this 2254 Petition for Inmate James Epps # 91742. That, because He Is Illiterate In Law & His Issues Are COMPLEX!

BY: George Luster
_____
Inmate George Luster #57587
Southern Desert Corr. Center
SDCC / POB 208
Indian Springs NV 89070

✳ PG __29__ of __31__ ✳

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JAMES ERIC EPPS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71727

**FILED**

MAR 14 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

James Eric Epps appeals from a judgment of conviction entered pursuant to a jury verdict of second-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Epps claims the district court erred by denying his motion to represent himself. "The Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees a defendant the right to self-representation." *Watson v. State*, 130 Nev. 764, 782, 335 P.3d 157, 170 (2014). However, a district court "may deny a request for self-representation that is untimely, equivocal, or made for the purpose of delay." *Id.* We review the district court's decision to deny a motion for self-representation for an abuse of discretion. *See id.* at 783, 335 P.3d at 171.

Epps' motion to represent himself was untimely. "If it is clear that the request comes early enough to allow the defendant to prepare for trial without need for a continuance, the request should be deemed timely." *Id.* (quoting *Lyons v. State*, 106 Nev. 438, 446, 796 P.2d 210, 214 (1990)). Epps' trial had been continued six times when he filed his motion to

1

represent himself. He filed the motion approximately one month before the scheduled trial date. And he informed the district court at the hearing on the motion that he would need a continuance if the motion were granted. Considering the timing of Epps' motion and his assertion he would need a continuance if his motion was granted, we conclude the district court did not abuse its discretion by denying Epps' motion to represent himself. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Silver

_____, J.
Tao

_____, J.
Gibbons

cc:    Hon. Douglas W. Herndon, District Judge
       Coyer Law Office
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

2

