1  CASE # CV-00204-GMN-VCF

_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 0 4 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

2

3  James Epps        petitioner

4      v

5  Director, Nevada Department          Motion to
                                        Amend - claims;
6  of Corrections, et al...             information.

7              respondents

8

9        On lines 22, 23, 24 of Attached order

10  it instructs me to Amend my petition to Add

11  my claim(s). As I have Also Attached my

12  claim Therein as well, that is 117 pages.

13  I have Also included Another motion

14  for Appointment of counsel, on myself needing

15  Assistance legally, since the Amended issues

16  Attached Are Abundantly complex. I Ask

17  this court respectfully to please consider

18  that motion As I don't have A clue of what

19  I'm am doing, clearly as you can see, I

20  Am at this courts mercy for its help on

21  these matters.

22  * I have sent this Amended claim in

23  as soon as I could possibly send it in.

24  as the Attached order has directed me to

25  do.

26        Thank you, very much.

27                      James Epps - #91742 #ID

28                      James Epps

## Standard of Review

Mr. Epps asserts he was denied his right to effective assistance of counsel, as trial counsel failed to conduct adequate pretrial investigations in preparation for trial; failed to file the appropriate pretrial motions; failed to object to the introduction of prejudicial evidence, failed to call expert and lay witnesses at trial; failed to object to inappropriate jury instructions and to the State's prosecutorial misconduct in misstating the law, as well as appellant counsel's failure to raise colorable claims on direct appeal, in violation of the Sixth and Fourteenth Amendment to the United States Constitution.

The question of whether a criminal defendant has received ineffective assistance of counsel presents a mixed question of law and fact, and is subject to independent review. Molina v. State, 87 P.3d 533, 537 (Nev. 2004); Smith v. Ylst, 826 F.2d 872, 875 (9th Cir. 1987), cert denied, 488 U.S. 829, 109 S.ct. 83 (1988)

////
////

The Supreme Court has instructed that "the Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results" Strickland v. Washington, 466 U.S. 668, 685, 104 S.ct. 2052 (1984).

The Nevada courts review claims of ineffective assistance of counsel under the two-prong test set forth in Strickland, 104 S.ct. 2052. See Rubio v. State, 194 P.3d 1224 (Nev. 2008). Under Strickland, the defendant must demonstrate that his counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense. Id. at 466 U.S. at 687; William v. Taylor, ___ U.S. ___, 120 S.ct 1166 (2003).

In Powell v. Alabama, 287 U.S. 45, (1932) the Court held that counsel has a duty to perform adequately during pretrial matters to include thorough investigations. Id. at ___, see also Sanborn v. State, 812

P.2d 1279 (Nev. 1991)(concluding counsel was ineffective in failing to conduct pretrial investigations); <u>Luce v. United States</u>, 469 U.S. 38, 41 (1984)(concluding attorney's have duty to file pretrial motions when foundation for the motion exist).

A claim of ineffective assistance of counsel on appeal is also examined under <u>Strickland</u>, 104 S.Ct. 2052. To establish prejudice based upon the deficient performance of appellate counsel, the defendant must show that the omitted issue would have a reasonable probability of success on appeal. <u>Dubamel v. Collins</u>, 955 F.2d 962 (5th Cir. 1992); see also <u>Firestone v. State</u>, 83 P.3d 279, 281 (Nev. 2004).

With this principle in mind, a district court is obligated to review the merits of the omitted issue. <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

Mr. Epps asserts the underlying claims of ineffective assistance of trial and appellate counsel violate the Sixth Amendment to undermine confidence in the jury's verdict to warrant the reversal of his conviction for a new trial.

////
////

3

# Legal Arguments

## Ground One

### Trial Counsel Was Ineffective In Failing To Conduct Adequate And Thorough Investigations In Preparation For Trial, In Violation Of The Sixth And Fourteenth Amendment

The Nevada Supreme Court reviews claims of ineffective assistance of counsel under the "reasonably effective" test set forth in Strickland v. Washington, ___ U.S. ___, 104 S.ct. 2052 (1984.); adopted in Warden v. Lyons, 683 P.2d 504 (Nev. 1984).

Under Strickland, an ineffective assistance of counsel claim has two components: (1) deficient performance, and (2) prejudice.

To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness"

and but for counsel's errors, the results of the proceedings would have been different. And, prejudice is established when a petitioner demonstrates a reasonable probability to undermine the confidence in the outcome of the trial based on counsel's deficient performance. Williams v. Taylor, __ U.S __, 120 S.ct. 1166 (2003).

## Deficient Performance

## A. Failure To Investigate Knife

In Powell v. Alabama, __ U.S __, 53 S.ct. 55 (1932), the Court held:

"Only through pretrial preparations can the defendant be assured that facts will be discovered which will disclose a potential defense to counsel. In the absence of adequate pretrial investigations both factual and legal knowledgable preparations for trial is impossible.

Without knowledgable trial pre-
parations, defense counsel cannot
reliably exercise legal judgment and
therefore, cannot render reasonable
effective assistance to his client."
Id. at 58.

Here, under Powell, trial counsel was
ineffective in failing to investigate and
secure forensic evidence demonstrating
the knife impounded as evidence was
not the knife used in the altercation,
in violation of the Sixth Amendment
and Strickland, 104 Sct. 2052.
Mr. Epps', in discussing the facts of the
case with both trial counsel and his
case investigator, informed them that the
knife impounded as being the murder
weapon, was not the knife he used in
the altercation and requested of trial
counsel to have the knife examined
and compared to the stab wound for
compatability, specifically, by their own
expert witness, Katherine Raven, MD,
a certified forensic pathologist who

6

had conducted over 4000 autopsies.
(Exh. A )

In Steidl v. Walls, 267 F.Supp. 2d. 919
(Ill. 2003), the Court, in reversing the
convictions for two counts of first-
degree murder resulting from a stabbing,
concluded that trial counsel was ineffe-
ctive in failing to conduct pretrial inves-
tigations to present forensic evidence
that the knife collected as evidence
of being the murder weapon, was
not the actual weapon.

Forensic evidence regarding the knife
was incompatible with the victim's
wounds, which would have an impact
on the defendant's credibility. Id. at
936-937.

In the instant case, trial counsel's
ineffective assistance mirror's the
Steidl, case to warrant the same
relief, as the investigation into the
knife being the actual murder weapon
could have been accomplished by
trial counsel, himself, reviewing the
appropriate documents and by requesting

of Ms. Raven, a medical doctor with expertise in forensic pathology and expert witness for the defense, to review the autopsy report findings regarding the stab wound and compare such finding to the characteristics of the knife to demonstrate how the fatal wound is not compatible with the knife, thus, to warrant the exclusion of evidence not related to the case.

The autopsy report and pathologic findings by Timothy Dutra, MD, PhD Medical Examiner, reads, in relevant part:

"There is a stab wound of the chest. . . . This stab wound measures 3 cm in length and gapes 1.2 cm at its midpoint. This stab wound has an orientation in the 10:00/4:00 plane . . . "

. . . The gaping defect caused by the stab wound in the hemorrhagic fibrofatty tissues of the subcutaneous tissue exposes a linear stab wound

8

of the conjoined costochondral
cartilages..."
          ... The thrust of the stab
wound is directly backward. The
path of the stab wound is via
skin, soft tissue, 7th costal cartilage
(perforating wound), pericardium
and heart (penetrating wound).
(page 3)
          The anterior aspect of this stab
wound in the 7th costal cartilage is
4.6 cm in length, and the posterior
aspect of the stab wound in the
costal cartilage is 4.2 cm in
length.
(page 4)
(Exh. B)


          On September 20, 2012, three days
after the altercation, the LVMPD
recovered a knife hidden in Daniel
Ruffo's backpack which officers believed
to be the murder weapon. The knife
was impounded as evidence, however,
LVMPD and the State never had

9.

the knife examined by the Medical Examiner for a factual determination of the knife being the actual murder weapon.

The Evidence Impound Report has the knife described as follows:

"Item 1: One (1) "Hunter 440 Stainless" metal handle silver colored pocket knife. Overall open length 8 1/4". Partially serrated blade 3 3/4 x 1".

(Exh. C )

In comparing the stab wound measurements and relating trauma to the characteristics of the knife, a serious question of compatibility in the wound and knife deserves scrutiny.

The first set of measurements indicate the stab wound is 3 cm in length and gapes 1.2 cm at its midpoint.

The knife blade is 3 3/4" in length and 1" in width. While the blade is long enough to produce the length (3 cm) of the wound, it could not produce the 1.2 cm

gapes at its midpoint. With a blade 1" in width, the gapes would be at a minimum of 1" at its midpoint.

The second set of measurements indicate the anterior aspect of the wound in the 7th costal cartilage is 4.6 cm in length, and the posterior aspect of the wound in the costal cartilage is 4.2 cm in length.

The width of this stab wound is between 0.1 and 0.2 cm.

Again, the knife can produce the length of 4.6 cm to the anterior and length of 4.2 cm to the posterior in the 7th costal cartilage. However, the knife's 1" blade would produce a wound with a width greater than between 0.1 and 0.2 cm.

As the thrust of the stab wound is directly backward, it would stand to reason that the 1" wide and serrated blade would produce wider gapes and noticable trauma to the affected area, surrounding tissue and cartilage in the path of the stab wound. Unfortunately,

this type of trauma is not reported with the stab wound.

When considering the totality of the circumstances, the knife in question is too large to produce the small stab wound.

In Avila v. Galaza, 297 F.3d 911 (9th Cir. 2002), the Court, relying upon Strickland, held:

"[A] lawyer who fails to investigate and introduce into evidence [evidence] that demonstrates his clients' factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance."

Id. at 919.

In the instant case, trial counsel's failure to read and make the simple comparison between the autopsy report findings and the characteristics of the knife, and then request of Ms. Raven to conduct a forensic

examination to secure an expert opinion on the knife not being the murder weapon, amounts to an egregious display of deficient performance that "fell below an objective standard of reasonableness" under *Strickland*, 104 S.ct 2052; *see also Thomas v. Kuhlman*, 255 F. Supp 2d. 99, 109 (EDNY 2003)(failure to investigate crime scene, investigate relevant evidence and read police reports released by the State, was ineffective to deny him his Sixth Amendment right).

To add insult to injury, trial counsel's lack of pretrial investigations into the knife not being the murder weapon, made for counsel's ineffectiveness in his closing arguments when attempting to raise doubt to the knife being the actual murder weapon.

In closing, trial counsel went on to state:

Mr. Kocka:

.... Ladies and gentlemen, a lot

13

of that might be smoke and mirrors as to is it the knife, is it not the knife because we know he had a knife in his hand. This doesn't come down to was the knife washed, was the knife not washed. There was a knife, It was in James Epps' hand. It wound up in Will Fetting's chest.

(T. T., 8-10-2016, p. 90 )[1]

Trial counsel's statement of, "as to is it the knife", was hallow because there was no evidence or testimony presented to the jury to suggest the knife was not the actual weapon used by Mr. Epps during the altercation, thus, clearly ineffective in arguing a vital matter before the jury without having first investigated the issue to ////
////

1. Trial Transcripts referred to as "TT" followed by the trial date and page number.

14 (□)

support the statement. See *Tejada v. Dubois*, 142 F.3d 18 (1st Cir. 1998)(Counsel ineffective in failing to present a coherent argument to judge and jury based on defense of police fabrication).

In the instant case, Mr. Epps, similar to *Oteidl v. Walls*, 267 F.Supp. 2d. 919 (Ill. 2003), was denied his right to effective assistance of counsel during a critical stage of the proceedings by failing to investigate and present forensic evidence and expert opinion testimony of the knife impounded as evidence not being the murder weapon, has created unfair prejudice against Mr. Epps and demonstrates representation that "fell below an objective standard of reasonableness", *Strickland*, 104 S.ct. 2052, in violation of the Sixth and Fourteenth Amendment.

////
////
////
////
////
////

15

## B. Victim's Propensity For Violence

In State v. Love, 865 P.2d 322 (Nev. 1993), the Court held:

"... failure of relatively inexperienced counsel to call potential witnesses, coupled with the failure to personally interview witnesses so as to make an intelligent, tactical decision leads this court to conclude in a case with little direct evidence of guilt, not only was counsel ineffective, but that the errors of counsel were so serious as to deprive the defendant of a fair trial who's results are unreliable and therefore to prejudice him."

Id. at 3

Here, trial counsel was ineffective in failing to persue adequate pretrial investigations into the victim's background to determine whether the victim had a propensity for violence when under the influence

16

of methamphetamine in preparation for trial to bolster Mr. Epps' unwaivering claim of the victim's death being an accident by acting in self-defense out of reaction to the victim charging towards him, was ineffective under Strickland, 104 S.ct. 2052.

Here, the autopsy report provides for a toxicological examination of postmortem peripheral wherein the victim's blood showed methamphetamine 230 ng/mL and amphetamine 17 ng/mL ... The blood level of methamphetamine is within the usually reported toxic range, and could be expected to have had both physiological and psychological effects; however, the degree of these effects is highly variable among individuals. (Exh. B)

Trial counsel, armed with the critical information of the victim being under the influence of methamphetamine to a high level of having a physiological and psychological effect in his behavior and thought process, did absolutely nothing to investigate the victim's background

for violence. Without question, the victim's criminal record of numerous arrest and convictions combined with the drug use, there exist a reasonable probability the victim had a propensity for violence.

In Sanborn v. State, 812 P.2d 1279 (Nev. 1991), the Court, in reversing the conviction for a new trial, concluded trial counsel was ineffective in failing to conduct an adequate pretrial investigation of the victim's background to determine if he had the propensity for violence, which would have bolstered the defendant's claim of self-defense. Id. at 1281, see also Tenny v. Dretke, 46 F.3d 404, 408-09 (5th Cir. 2005)(ineffective assistance of counsel for the failure to investigate and call witnesses to elicit critical evidence from witnesses to show victim was the aggressor to support self-defense theory).

////
////
////
////

In the instant case, as Mr. Epps' movement was in reaction to the white flash advancing towards him as a means to defend himself from the unknown harm, which turned out to be the victim when they collided with each other, it was critical for trial counsel to expose the victim's background to demonstrate how Mr. Epps' actions were totally accidental by way of his act of self-defense.

Accordingly, trial counsel should have interviewed the victim's family, friends and known associates to gain a complete understanding of the victims history of drug abuse, behaviors and his social background to utilize in Mr. Epps' defense.

Accordingly, trial counsel's representation "fell below an objective standard of reasonableness", to amount to deficient performance under the Strickland, 104 S.ct. 2052, standard and Sixth Amendment to the U.S. Constitution.

////
////
////

19

# Prejudicial Effect

The prejudicial effect to trial counsel's ineffective assistance in this case is irreparable to deny Mr. Epps his Sixth and Fourteenth Amendment rights to the U.S. Constitution and warrant the reversal of the conviction and remand for a new trial.

Trial counsel's failure to investigate the knife as being the murder weapon has created unfair prejudice to Mr. Epps as the State was permitted to intro-duce inadmissible and unrelated evidence that was testified to by several witnesses as the weapon that Mr. Epps attempted to dispose of. The introduction of the knife allowed the State to challenge Mr. Epps' credibility in questioning him about washing blood from the knife, to leave the jury with the inaccurate impression impression that there was nothing inconsistent with the knife and fatal wound. See Washington v. Smith, 219

20

F. 3d 620, 627 (7th Cir. 2000)(excluding the evidence would have undercut the impact of testimony).

The State's entire case was based on whether the jury found Mr. Epps or the State more credible and the prejudicial effect to trial counsel's failure to investigate the knife and victim's background for the propensity of violence has denied him the right to effective assistance of counsel during a critical stage of the proceedings and denied him the right to a fair trial as he was stripped of the opportunity to present evidence of the knife not being the murder weapon and have such tainted evidence excluded and not have his credibility challenged by the State's questioning of Mr. Epps regarding the events surrounding how he handled the knife.

Additionally, the exclusion of the knife prior to jury trial would have undercut the impact of the testimony of atleast three of the State's witnesses

21 ( ☐ )

at trial.

The prejudice impact to trial counsel's failure to investigate the victim's background to present evidence of the victim's propensity for violence has denied Mr. Epps the right to effective assistance of counsel in counsel's failure to present viable and credible evidence of the victim's aggressive nature and violent nature when under the influence of high levels of methamphetamine to bolster his credibility and claim of acting in self-defense with the jury to give more weight to his defense which would have created a high probability in the jury returning a Not guilty verdict or a verdict of guilt to the lesser charge of Involuntary Manslaughter With Use of a Deadly Weapon.

When considering the cumulative prejudicial effect to trial counsel's deficient performance and totality of the circumstances, counsels actions, or lack thereof, cannot be deemed to be a "Stratigic" decision not to investigate.

22

the facts, evidence and credible information relevant to the case and Mr. Epps' defense.

Furthermore, considering the evidence which could have been excluded and the evidence that could have been presented but for trial counsel's errors, there is a reasonable probability the results of the trial would have been extremely different. William v. Tylor, 120 S.ct 1166 (2003); Steidl v. Walls, 267 F.Supp 2d 919 (Ill. 2003).

As the deficient performance and resulting prejudice has undermined confidence and reliability in the jury's verdict and entire trial to violate the Sixth and Fourteenth Amendment to the U.S. Constitution, Mr. Epps' conviction must be reversed and remanded for a new trial.

Relief is warranted.
/////
////
/////

23

# Ground Two

## Trial Counsel Was Ineffective In Failing To Cross-Examine Witnesses To Expose Evidence Of The Victim Being Under The Influence Of Methamphetamine At The Time Of His Death To Bolster Mr. Epps' Theory Of Self-Defense, In Violation Of Sixth And Fourteenth Amend.

Under Strickland, 104 S.Ct. 2052, a claim of ineffective assistance of counsel has a two-part element; (1) a demonstration of counsel's deficient performance, and (2) prejudice to the defense. Id.

## Deficient Performance

Trial counsel was ineffective in failing to conduct thorough cross-examinations of the witnesses to expose vital evidence of the victim being under the influence of a toxic level of methamphetamine at the time of his death, to bolster Mr. Epps' claim of self-defense,

24

to demonstrate deficient performance.
in violation of Strickland.

In the instant case, the State called
Mr. Dutra, MD, and Medical Examiner
who performed the autopsy on the
victim, to testify as to the cause of
death to the victim. Along with the
medical examiner's testimony, the
State entered the autopsy report as
evidence. The autopsy report, in relevant
part, states:

"... Toxicological examination of postmortem
peripheral blood showed methamphetamine
230 ng/mL and amphetamine 17 ng/mL.
Amphetamine is a metabolite of
methamphetamine. The blood level of
methamphetamine is within the usually
reported toxic range, and could be
expected to have had both physiological
and psychological effects; however, the
degree of these effects is highly variable
among individuals."

(Exh. B )

////
////
////

25 ( )

The State, by having the medical examiner testify to the victims cause of death and entering the autopsy report as evidence to its case, has knowingly put the victim's drug use in question and opened the door to the defense to explore and expose the fact of the victim being under the influence of a toxic range of meth at the time of his death, as well as the victim's potential physiological and psychological reaction of being on meth being a contributing factor to his own demise.

Trial counsel, proceeding on a theory of self-defense, failed to cross-examine the medical examiner regarding the victim's toxic level of meth in his blood and the potential affect it may have had on the victim in the emotionally charged incident that resulted in the victims death, to bolster Mr. Epps claim of self-defense, thus, denying him his Sixth Amendment right to effective assistance of counsel. See Harris v. Cotton, 365 F.3d 552, 555-57 (7th Cir. 2004)(counsel ineffective in

failing to obtain toxicology report to show victim was under the influence of cocaine at the time of shooting to support self-defense theory).

Trial counsel, when putting on its case, called Dr. Katherine Raven, MD and Forensic Pathologist, as an expert witness. On direct examination Dr. Raven testified to having reviewed the coroner's autopsy report and Mr. Epps' custodial interrogation transcripts and concluded she could not rule out the scenario of the victim's death occurring as Mr. Epps described.

Trial counsel, in questioning Dr. Raven regarding the findings of the autopsy report, failed to ask if her conclusion of Mr. Epps' reaction of acting in self-defense to the victim rushing toward him, was reached by the victim being under the influence of a toxic range of meth.

Trial counsel was ineffective in failing to ask of Dr. Raven's expert opinion as to the victim's potential physiological and psychological reaction in the violent and emotionally charged situation while under

27

the influence of a toxic level of meth, as being a factor to his own demise, to give credibility to Mr. Epps' testimony and claim of self-defense by accident. See Knorr v. State, 748 P.2d 1, 3 (Nev. 1987)(ineffective assistance of counsel based on inability to phrase his questions to a witness to elicit a proper response to his attempt to rebut the State's evidence).

In Brown v. State, 877 P.2d 1071 (Nev. 1994), the Court addressed the issue of trial counsel's failure to conduct a thorough examination of witnesses to conclude such action's resulted in ineffective assistance of counsel to note that "[h]owever much it may infuriate the jury, a properly zealous advocate must do all he can to defend his client," Id. at 1073, as one eminent defender wrote:

"[C]ross examination is the only scalpel that can enter a hidden recess of a man's mind and root out fraudulent deception, of dragging out the truth of a reluctant witness, and assuring the triumph of justice over venality. . . . [as] cross-examination is one of the most powerful

tools of the defender, one that must never be neglected when it would achieve the necessary results."

Id. 877 P.2d at 1073.

In the instant case, as trial counsel was aware of the autopsy report containing evidence of the victim being under the influence of a toxic level of meth at the time of his death and the medical examiner's expert opinion that the level of meth "could be expected to have had both physiological and psychological effects", it was extremely critical for trial counsel to explore and expose the evidence through an effective examination of the medical examiner, Dr. Dutra and defense witness, Dr. Raven, to bolster Mr. Epps' credibility and claim of self-defense.

Without question, trial counsel's failure to thoroughly examine these witnesses regarding the victim's toxic level of meth in his blood at the time of his death, falls well short of being a zealous advocate in

29

defending Mr. Epps' constitutional rights to a fair trial and providing effective assistance as guaranteed by the Sixth Amendment to demonstrate representation that "fell below an objective standard of reasonableness", Strickland, 104 S.ct. 2052, and deficient performance in accordance with Brown, 877 P.2d at 1073.

## Prejudicial Effect

The prejudicial effect to trial counsel's deficient performance in failing to conduct thorough examinations of expert witnesses on vital evidence directly related to the death of the victim and significant to Mr. Epps' defense, is irreparable and obvious to undermine confidence in the jury's verdict and resulting conviction. Williams v. Taylor, 120 S.ct. 1166 (2003).

The jury, in deliberating on the guilt or innocence of Mr. Epps, was left to weigh the credibility of his testimony of killing the victim by accident and by acting in self-defense, simply because

30

trial counsel's failure to thoroughly exa-
mine witnesses and expose the vital
evidence in question, has ultimately deprived
the jury of evidence and testimony which
potentially contributed to the victim's
own demise, in deliberating Mr. Epps'
guilt and innocence.

   Trial counsel's actions, or lack thereof, can-
not be deemed a "tactical decision" under the
Strickland standard and there is a
"reasonable probability" that, but for trial
counsel's errors, the results of the trial
would have been completely different.
Wiggins v. Smith, 123 S.ct. 2527 (2003).

   Wherefore, as the deficient performance
of trial counsel has created unfair prejudice
to undermine confidence in the jury's
verdict and produce a conviction in viola-
tion of the Sixth and Fourteenth Amend-
ment to the U.S. Constitution, Mr. Epps'
conviction must be reversed and remand-
ed for a new trial.

Relief is warranted
////
//// -
////

31

# Ground Three

## Trial Counsel Was Ineffective In Failing To Have Expert Witness Dr. Chambers Made Available To Testify Via Video Conferencing On Fight-Or-Flight, In Violation Of Sixth And The Fourteenth Amendment

As dictated in <u>Strickland v. Washington</u>, 104 S.ct. 2052 (1984), an ineffective assistance of counsel claim has two elements that must be established: (1) deficient performance, and (2) prejudice resulting from the deficient performance. Id.

## Deficient Performance

Trial counsel was ineffective in failing to have defense expert witness, Doctor Chambers, available to testify via video conference on the phenomenon of "fight-or-flight" in relation to the defense's theory of self-defense, in violation of the Sixth Amendment and standards set

32

forth in <u>Strickland</u>, 104 S.ct. 2052, to
result in extreme prejudice.

Trial counsel, on June 1, 2016, had
Mr. Epps interviewed by Dr. Marc Chambers,
Forensic Psychologist in relation to the
incident and his reaction to the victim
to make a factual determination as to the
cause of the victim's death.

In relevant part, Dr. Chambers' conclu-
sion and report reflects information of
"fight-or-flight" in relation to self-defense
and that to a reasonable degree of psycho-
logical certainty, Mr. Epps' actions in the
case was the result of an emotionally
charged environment and his perception
that the victim represented an immediate
threat to his physical safety and survival.
(Exh D )

Based on the report, Dr. Chambers
was properly noticed as an expert wit-
ness to testify to the phenomenon of
"fight-or-flight" and the psychological
dynamics it has on an individual, as his
expert testimony was extremely vital
to Mr. Epps' theory of self-defense

33

resulting in an accidental death of the victim.

With the trial date set for August 1, 2016, as agreed upon at the hearing of May 19, 2016, trial counsel had ample time to ensure Dr. Chambers would be available to testify at trial. However, despite counsel's awareness of the great importance of Dr. Chambers' testimony to the defense, trial counsel waited to the last minute to inform Dr. Chambers of the trial date which resulted in serious issues of his schedule and availability to testify in person. (Exh. A )

On August 1, 2016, there was discussions regarding the unavailability of defense expert witness, Katherine Raven, MD and that she would testify via video conferencing. However, despite Dr. Chambers testifying in the defense case, which was not presented until the 9th day of the trial, counsel failed to make the appropriate arrangements to have Dr. Chambers available to testify via video conferencing just as Dr. Raven would be testifying.

34

NRS 50.275, provides for expert witness testimony or opinion if such expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. See Pineda v. State, 88 P.3d 827, 833 (Nev. 2004).

In the instant case, trial counsel had an expert witness, Dr. Chambers, Clinical and Forensic Psychologist, who was going to provide expert testimony and opinion on "fight or flight" to educate the jury as to the psychological dynamics of such phenomenon and the effect it has on an individual, specifically, in relation to Mr. Epps' reactions of being in an emotionally charged environment that created the perception of the victim's actions represented an immediate threat to his physical safety and survival. (Exh. D )

However, when confronted with a scheduling conflict for Dr. Chambers to testify in person, trial counsel, aware that Dr. Chambers testimony was vital to bolstering Mr. Epps' testimony and

self-defense theory, prejudicially
failed to make alternative arrange-
ments to have Dr. Chambers testify
via video conferencing, which denied
Mr. Epps and the jury the benefit
of expert forensic testimony to give a
scientific explanation to the death of
the victim being a product of self-defense
and an unfortunate accident, in violation
of the Sixth Amendment right to effective
assistance of counsel. See, e.g., Pavel v.
Hollins, 261 F.3d 210, 219 (2nd Cir. 2001)
(finding ineffectiveness for failure to
call expert witness whose testimony
would have bolstered defense theory).
    In Paine v. Massie, 339 F.3d 1194
(10th Cir. 2003), in reversing the convic-
tion and remanding with instructions,
the court concluded trial counsel was
ineffective in failing to offer expert
testimony on battered woman syndrome
to support a claim of self-defense.
The court found that BWS is a "sub-
stantial scientifically accepted theory"
where expert testimony would assist

36

the trier of fact. Id. at 1199.

Here, with "fight or flight" being a substantial scientifically accepted theory that is commonly associated with the psychological dynamics when an individual is confronted with a high-stress situation, to support a claim of self-defense, counsel was obligated to ensure Dr. Chambers provided expert testimony consistent with his forensic psychological report, by any means necessary, to bolster Mr. Epps' credibility and testimony of acting in self-defense.

Without question, trial counsel's actions, or lack thereof, demonstrates deficient performance that "fell below an objective standard of reasonable-ness" to amount to the clearest form of ineffective assistance of counsel under Strickland, 104 S.ct. 2052, and in violation of the Sixth Amendment to the U.S. Constitution.

37

# Prejudicial Effect

The prejudicial effect of counsel's deficient performance is obvious and irreparable to create unfair prejudice to the highest magnitude to undermine confidence in the jury's verdict as Mr. Epps was ultimately denied his statutory right and opportunity to introduce a credible expert witness to give scientific forensic testimony and opinion on "fight or flight" psychological dynamics which would have educated the jury on the effect it had on Mr. Epps' reaction of being in the emotionally charged environment that created the true perception of the victim's actions, who was under the influence of a toxic level of methamphetamine at the time of the altercation and his death, represented an immediate violent threat to his physical safety and survival.

////
////
////
////

38

Dr. Chambers' expert opinion was critical and would have enhanced Mr. Epps' credibility with the jury as being truthful; the expert testimony would have bolstered Mr. Epps' claim of self-defense and accidental death of the victim, and would have provided the trial court with the evidence necessary to, sua sponte, instruct the jury on self-defense, an instruction not given solely on Mr. Epps' testimony. See Bell v. Miller, 500 F.3d 149 (2nd Cir. 2007)(finding no "tactical justification for the course of action trial counsel chose").

Wherefore, but for counsel's errors, there is no doubt the results of the trial and jury's verdict would have been different. Wiggins v. Smith, 123 S.ct 2527, 2536 (2003). Trial counsel's errors violate the Sixth and Fourteenth Amendment to the U.S. Constitution to warrant the reversal of the conviction and remand for a new trial.

Relief is warranted

39

# Ground Four

## Trial Counsel Was Ineffective In Failing To Call And Have Nicholas Farmer Made Available As A Witness To Testify For The Defense, In Violation Of The Sixth And Fourteenth Amendment, U.S. Constitution.

An ineffective assistance of counsel claim requires of a defendant to establish two elements: (1) deficient performance, and (2) prejudice to the defense. Strickland, 104 S.ct. 2052 (1984).

## Deficient Performance

Trial counsel was ineffective in failing to call and have witness Nicholas Farmer, made available to testify for the defense, in violation of the Sixth Amendment and standards set forth in Strickland 104 S.ct. 2052.

Mr. Epps, prior to trial, advised trial counsel of a witness, Nicholas (Nick) Farmer



40

he wished to have interviewed and called to testify at trial, as he (Mr. Farmer) had first-hand information into the events surrounding the case.

On July 18, 2016, trial counsel and case investigator Venus Lovetere had a face-to-face meeting with Mr. Farmer while he was in-custody at the Clark County Detention Center (CCDC) on a parole hold. (Exh. F.)

On July 19, 2016, trial counsel informed the district court of having interviewed Mr. Farmer and had advised the State of its intention to call Mr. Farmer as a witness at trial.

Mr. Epps, in custody at CCDC with Mr. Farmer, learned of Mr. Farmer being transported back to the Nevada Department of Corrections (NDOC) at High Desert State Prison (HDSP) for his parole violation. As Mr. Epps learned of Mr. Farmer's situation prior to the commencement of his trial on August 1, 2016, Mr. Epps immediately informed trial counsel and his case

Investigator of the matter to ensure
trial counsel had ample time to contact
the court to secure an order to have
Mr. Farmer transported from HDSP for
the trial. (Exh. A )

By the time in which the State
closed its case and the defense (Mr.
Epps) started its case, on the ninth
day of trial, counsel had not secured
a transport order for Mr. Farmer and
he was never called to testify at
Mr. Epps' jury trial.

In State v. Love, 865 P.2d 322 (Nev.
1993), the Court held:
" ... the failure of relatively inexperienced
counsel to call potential witnesses, ...
leads this court to conclude ... not only
was counsel ineffective, but that the
errors of counsel were so serious as
to deprive the defendant of a fair
trial who's results are unreliable
and therefore to prejudice him."

Id. at 325, see also Ramonez v. Berghuis,
490 F.3d 482, 489 (6th Cir. 2007)(counsel

ineffective in failing to call witnesses to the stand, which counsel knew would provide beneficial testimony).

In the instant case, trial counsel was not relatively inexperienced, but yet, he is well seasoned in handling a criminal jury trial and securing the appropriate orders from the courts to have witnesses transported and made available to testify at a trial. However, despite counsel's awareness of Mr. Farmer's beneficial testimony to be given at Mr. Epps' jury trial, and the ample time to secure a transport order to ensure Mr. Farmer was made available to testify, counsel's failure to call Mr. Farmer as a witness for the defense, not only was ineffective, but constituted an error so serious, it deprived Mr. Epps "of a fair trial who's results are unreliable and therefore to prejudice him." Love, 865 P.2d at 325.

Unequivocally, Mr. Farmer's testimony was critical to Mr. Epps' defense to demonstrate he (Mr. Epps) had absolutely no problem with the victim prior to the

incident or on the night in question,
which would have added weight and
credibility to Mr. Epps' testimony of hav-
ing absolutely no plans or intentions to
physically engage with the victim, let
alone, kill him. (Exh. F )

As trial counsel's failure to call Mr. Farmer
as a witness in Mr. Epps' trial "can hardly
be said... [to be] a strategic choice,"
Sanders v. Ratelle, 21 F. 3d 1146, 1175 (9th
Cir. 1994), that is consistent with the
Sixth Amendment right to effective assist-
ance of counsel, such representation "fell
below an objective standard of reason-
ableness," Strickland, to demonstrate
deficient performance.

## Prejudicial Effect

Trial counsel's blatant ineffective assis-
tance in failing to call Mr. Farmer as a
witness, has created extreme prejudice
to Mr. Epps' entire defense to deny him
his guaranteed rights to a fair trial, effec-
tive assistance of counsel and equal due

process of the law under the Sixth and Fourteenth Amendment to the U.S. Constitution, and there is more than a "reasonable probability" that but for counsel's errors, the results of the trial would have been extremely different. William v. Taylor, 120 S.ct. 1166 (2003).

The prejudice created by trial counsel's shortcomings has undermined the reliability in the jury's verdict and resulting conviction to violate Mr. Epps' constitutional rights to warrant the reversal of his conviction and remand for a new trial.


Relief is warranted

////
////
////
////
////
////
////
////
////
////

45

# Ground Five

## Trial Counsel Was Ineffective In Failing To Offer A Proposed Instruction Or Requesting Of The District Court To Provide A Standard Instruction On Self-Defense, In Violation Of The Sixth And Fourteenth Amendment, U.S. Constitution

The Nevada court's reviews claims of ineffective assistance of counsel under the two-prong test set forth in <u>Strickland</u>, 104 S.ct. 2052 (1984), of showing: (1) deficient performance, and, (2) prejudice. See, <u>Warden v. Lyons</u>, 683 P.2d 504 (Nev. 1984).

## Deficient Performance

Trial counsel, despite putting the trial court on notice of advancing a theory of self-defense, at the hearings of July 19, 2016 and July 28, 2016, (Exh. E), and testimony of Mr. Epps and

46

defense expert witness, Dr. Raven, forensic pathologist, of the victim's death and fatal wound was caused by and consistent with Mr. Epps' testimony of an accidental death as a direct result of reacting in a manner of self-defense, has failed to offer a proposed instruction or request of the district court to provide an instruction on self-defense, in violation of the standards of Strickland, 104 Sct 2052, to demonstrate deficient performance in violation of the Sixth Amendment.

At the hearing of July 28, 2016, three days before trial, the issue of Mr. Epps' self-defense theory was discussed as follows:

" ... Court noted that the defense has noticed a Dr. Chambers ... to testify to ... the evidence ... as to how it relates to the Deft's assertion of self-defense in this matter. The Court believes the explanation is somewhat vague, ..."

47

Mr. Kocka advised that he purposely was vague so as to not to disclose their defense strategy; Defense is asserting a self-defense theory and whether this is a fight or flight situation...."

"Colloquy regarding the self-defense issue; the Deft. would need to testify that he stabbed the victim in self-defense. Mr. Kocka advised that right now this is the defense strategy and the Deft. intends to testify. ..."

(Exh. E ), see also, (Exh. D, psychological report by Dr. Chambers providing Mr. Epps' reaction to the victim rushing at him resulted in a posture of self-preservation that was not entirely conscious).

On August 9, 2016, Mr. Epps testified to the fact of taking the life of the victim by accident via his self-defense reaction of being in the emotionally

48

charged environment and that he had no
intention of stabbing the victim.
    Finally, defense expert witness,
Dr. Katherine Raven, MD and forensic
pathologist provided expert testimony
and opinion in support of the key com-
ponent of Mr. Epps' theory of defense,
being self-defense.
    Dr. Raven testified to having reviewed
the coroner's autopsy report along with
the transcripts of Mr. Epps' custodial
interrogation from 2012, and compared
the pathological findings from the victim's
autopsy to the factual scenario Mr. Epps
told the detectives about how the
victim suffered the fatal stabbing.
    In Dr. Raven's expert opinion, she could
not rule out the scenario that if the
victim charged at Mr. Epps with sufficient
force, and Mr. Epps had a firm grip on the
knife when reacting to the victim's actions,
the fatal stab wound could have occurred
in such a manner. That manner being an
accidental death in relation to a reaction
of acting in self-defense.
....////
....////

                    349

In <u>Davis v. State</u>, 321 P.3d 867 (Nev. 2014), in reversing the conviction and remanding for a new trial, relied upon <u>Crawford v. State</u>, 121 P.3d 582 (Nev. 2005), to hold:

"A defendant has the right to have the jury instructed on [his or her] theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be'"

Id. at 321 P.3d at 871.

In the instant case, despite Mr. Epps' testimony supporting his self-defense theory that he reacted to the victim's act of rushing toward him in the emotionally charged environment that caused him to reasonally believe that he was in imminent danger from the victim and his reaction was necessary under the circumstances to avoid death or great bodily harm to himself, which was reinforced by Dr. Raven's testimony, the district court did not provide the jury with a self-defense

50

instruction..

In Javor v United States, 724 F.2d 831 (9th Cir. 1984), the court held that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is actually necessary. Id. at 833.

In the instant case, trial counsel's failure to offer a proposed jury instruction on self-defense and/or request of the trial court to provide a standard instruction on self-defense that would be tailored to the facts of the case as provided for under Runion v. State, 13 P.3d 52, 59 (Nev. 2000), was equal to the conduct of sleeping through a substantial portion of the trial at a critical stage of the trial. See Strickland, 104 S.ct. 2052.

Here, as Mr. Epps was deprived of expert witness testimony of Dr. Chambers, forensic psychologist, that would have supported the self-defense theory, trial

51 [___]

counsel should have KNOWN, or is
charged with the duty of knowing, that
a jury instruction on self-defense
would force the jury to be in a position
of having to give serious deliberation
to Mr. Epps' reaction to the victim
rushing toward him as being a by-
product of him reasonably believing he
was in imminent danger from the
victim.

Thus, trial counsel was obligated to
offer a proposed jury instruction on self-
defense patterned after the decision in
<u>Runion v. State</u>, 13 P.3d 52, 59 (Nev. 2000),
which held that a self-defense instruction
should be tailored to the facts and circum-
stances of a case, rather than simply
relying on "stock instructions". Id at 59-
60.

Without question, trial counsel's actions,
or lack thereof, in failing to offer a proposed
jury instruction on self-defense, or request
of the trial court to provide a self-defense
instruction based upon the provided testi-
mony, where the trial court failed to

52

provide the justifiable instruction, clearly demonstrates representation that "fell below an objective standard of reasonableness" under <u>Strickland</u>, 104 S.ct. 2052, to deny Mr. Epps his Sixth and Fourteenth Amendment rights to the U.S. Constitution.

## <u>Prejudicial Effect</u>

The prejudicial effect of counsel's deficient performance is obvious and irreparable to create prejudice to the highest degree as Mr. Epps was deprived of the right to have the jury properly instructed on his self-defense theory, when the provided testimony entitled him to such instruction, thus, the lack of the proposed jury instruction on self-defense was a contributing factor, at least partially, to Mr. Epps conviction.

The proposed instructions on his theory of self-defense, would have informed the jury about justifiable homicide because the approved self-defense would only reference "Killing", pursuant to N.R.S 200.120(1).

Additionally, with trial counsel's failure to offer a proposed self-defense instruction, it is not clear whether the jury reached its verdict because (1) the jurors found that Mr. Epps acted in self-defense on the murder charge because there were no other crime for which they were provided self-defense instructions. See Williams v. State, 665 P.2d 260, 261 (Nev. 1983)("if a defense theory of the case is supported by some evidence which, if believed, would support a corresponding jury verdict, failure to instruct on that theory totally removes it from the jury's consideration and constitutes reversible error.").

Wherefore, but for counsel's prejudicial errors, there is a "reasonable probability" the results of the trial and jury's verdict would have been different. Wiggins v. Smith, 539 U.S. ___ 123 S.ct. 2527, 2536 (2003).

Trial counsel's actions violates the Sixth and Fourteenth Amendment to the U.S. Constitution to warrant the reversal of the conviction

Relief is warranted ___

-54

# Ground Six

## Trial Counsel Was Ineffective In Failing To Object To State's Improper Commentary In Defining Deliberation Of Jury Instruction No. 9, In Violation Of The Sixth And Fourteenth Amendment U.S. Const

Under Strickland v. Washington, __U.S.__, 104 S.ct. 2052 (1984), two key elements must be established to a claim of ineffective assistance of counsel; (1) deficient performance, and (2) prejudice. Id.; see State v. Love, 865 P.2d 322, 323 (Nev. 1993).

## Deficient Performance

In Reagan v. Norris 365 F.3d 616 (8th cir. 2004), the Court ruled trial counsel was ineffective in failing to object to erroneous jury instructions that demonstrated deficient performance to create unfair prejudice under Strickland, 104 S.ct 2052.

In the instant case, trial counsel was ineffective in failing to object to the State's improper commentary in the attempt to supplement, change, clarify or compare the definition of Deliberation in Jury Instruction No. 9, in violation of Strickland, 104 S.ct. 2052, and Sixth Amendment right to the U.S. Constitution.

In the Closing Arguments, the State, in addressing Instruction No. 9, which defines willful, deliberation and premeditation, attempted to illustrate the definition of "Deliberation" through improper commentary as follows:

Ms. Baharav:

... So was it deliberate? Deliberation is in instruction nine. It's the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and considering the consequences of that action. So weighing the reasons for and against an action.

56

The State proceeds to describe the element "Deliberation" by improperly comparing the process to an individual waking up late for work. He jumps in his car and the stoplight he comes to turns from green to yellow and at that precise moment, a bunch of thoughts go through his head; do I have time to stop if the car in front of me stops?

You look for cars in the intersection to determine if someone is going to hit you if you run the yellow light, and you think to yourself; is there a cop anywhere around? These thoughts run through your head in a split second and you make your decision based on these thoughts.

You consider the consequences of your actions of whether you should run that yellow light. You have weighed the reasons for it against your actions. You have considered the consequences. You weighed all factors around you. "And ladies and gentlemen, that can be how quick it is to deliberate consequences." (Trial Trans, 8-10-2016, p. 27, 40-42).

57

In Holmes v. State, 972 P.2d 337 (Nev. 1998), the Court, in reversing and remanding the conviction for murder with the use of a deadly weapon, held that the wrongful submission of an improper instruction on reasonable doubt was reversible error when coupled with the State's attempt to supplement, change or clarify the reasonable doubt definition to being compared to the decision of buying a house or major life decisions such as purchasing a car. Id.

The court concluded that the prosecutor's improper commentary and comparison on the jury instruction enabled "the jury to convict . . . on a lesser burden of proof than is constitutionally required." Id. at 342; see also McCullough v. State, 657 P.2d 1157, 1158 (Nev. 1983)(the court expressing disapproval of prosecutor's attempt to supplement, change or clarify statutory instruction).

////
////

In the instant case, Instruction
No. 9, was not improper in defining
deliberation. However, simular to
Holmes, the State's attempt to
illustrate the definition of "Deliberation"
as being equivalent to the decision
making process of waking up late
for a meetng at work and whether
to run a yellow light because you're
running late for work, was an
improper comparison because it
enables "the jury to convict . . . on
a lesser burden of proof than is
constitutionally required." Holmes, 972
P.2d at 342.

Trial counsel, a well seasoned trial
attorney, knew or is charged with the
duty of knowing, that the State's
illustration in defining deliberation,
in a murder case, as being as simple
to the decision to run a yellow light
because you're late for work, was
improper and prejudicial and counsel's
failure to object demonstrates
deficient performance to result in
unfair prejudice under Strickland,

59

104 S.ct. 2052.

## Prejudicial Effect

Trial counsel's failure to object to the State's improper comparison in defining deliberation was deficient to create unfair prejudice to Mr. Epps to allow "the jury to convict... - on a lesser burden of proof than constitutionally required". Holmes, 972 P.2d at 342.

Counsel's actions, or lack thereof, cannot be deemed a sound "tactical decision" under Strickland, supra, and creates a "reasonable probability" that but for counsel's errors, the results of the verdict and trial would have been different. William v. Taylor, 120 S.ct. 1166 (2003).

As trial counsel's deficient performance and resulting prejudice violate the Sixth Amendment to undermine the confidence in the outcome of the trial, Mr. Epps' conviction must be reversed and remanded for a new trial.

Relief is warranted.

60