UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES EPPS,

            Petitioner,

v.

RONALD OLIVER,[1] et al.,

            Respondents.

Case No. 2:22-cv-204-GMN-MDC

**MERITS ORDER**

Petitioner James Epps, who was found guilty of second-degree murder with the use of a deadly weapon and sentenced to an aggregate sentence of 18 years to life in prison, filed a counseled Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 28, 38-40.) This matter is before this Court for adjudication of the merits of the Amended Petition, which alleges that (1) the trial court violated Epps's right to self-representation and (2) Epps's trial counsel failed to call a witness to testify. (ECF No. 28.) For the reasons discussed below, this Court grants the Petition.

**I.    BACKGROUND**

    **A.    Factual Background**[2]

Gary Fetting testified that on September 17, 2012, at approximately 9 pm, he had just finished eating dinner with his twenty-two-year-old son, William Fetting. (ECF No. 38-20 at 127,

---

[1] The state corrections department's inmate locator page states that Epps is incarcerated at Southern Desert Correctional Center. Ronald Oliver is the current warden for that facility. At the end of this order, this Court directs the clerk to substitute Ronald Oliver as a respondent for Respondent Director Nevada Dept. of Corrections. *See* Fed. R. Civ. P. 25(d).

[2] This Court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the case.

129–130.) William left their apartment, and while Gary was working on some music, Epps and Larry Hill knocked on his door. (*Id.* at 131.) The men told Gary that William owed them $200, and Epps stated that he was "going to get him," referring to William. (*Id.* at 132–133.) After the men left, Gary went outside to smoke a cigarette and "scope out the situation." (*Id.* at 138, 164.) When William came walking back to their apartment with a friend, Gary told William about the men. (*Id.* at 139.) Gary and William then spotted the men, and William ran away, telling his father to call 911. (*Id.* at 140.) The men caught up to William, tackled him, and started beating him. (*Id.* at 141–42.) Gary ran to help his son, and after William got away, he started to run toward the apartment. (*Id.* at 143.) While Gary continued to fight with Hill, Epps followed William. (*Id.* at 146, 152.) Gary then heard William "yell[ ] out dad, he stabbed me." (*Id.* at 146.) Gary tried to help his son, by compressing the wound, but then "blood started coming out of his mouth." (*Id.* at 148.)

Russell Bright testified that he met up with William on the night of September 17, 2012, and as the two of them were walking back to William's apartment complex, he noticed two men walking toward them. (ECF No. 38-25 at 65, 68.) Bright recognized one of the men as Epps, someone he had been familiar with for several years. (*Id.* at 68.) Epps told William that William owed him money. (*Id.* at 70.) William appeared nervous and scared, took off running, and yelled for someone to call the police. (*Id.* at 71.) The men chased after William, tackled him, and started hitting him. (*Id.* at 71–72.) Gary pulled Hill off William, and William started running again. (*Id.* at 72–73.) Epps followed William, and then Bright saw Epps hit William in the chest. (*Id.* at 79.) William took a couple of steps and then collapsed. (*Id.* at 80.)

Connie Doyle testified that she was sitting outside with a neighbor on the night of September 17, 2012, when she saw some men visit Gary in his apartment up the stairs from where

she was sitting. (ECF No. 38-25 at 118, 123, 127.) Doyle saw the men leave and start walking down the street. (*Id.* at 127.) Doyle then heard one of the men say that he saw William, prompting the men to start running. (*Id.* at 129–130.) Doyle saw that one of the men had a knife, and the man with the knife hit William when William tripped over a stair. (*Id.* at 133–134.) William then called for his dad and for help. (*Id.* at 134.)

During his police interview, Epps admitted to having stabbed William. (ECF No. 38-29 at 38.) Epps explained that while he was watching Hill and Gary fighting after he and Hill had pursued and tackled William, he was holding a knife, but he believed the blade was closed. (*Id.* at 41.) Epps told the police that he saw a flash out of the corner of his eye, and "he simply turn[ed] around and the knife struck William." (*Id.* at 45–46.) Similarly, at his trial, Epps testified that he "observe[d] a flash coming from [his] left side," and he "turned right into the flash." (ECF No. 38-31 at 15, 47.) Epps testified that the "[f]lash was William," and the two of them "came together." (*Id.* at 48, 50.) William stated that he had been stabbed, and Epps "look[ed] down and the knife was open." (*Id.* at 50.) Thus, according to Epps, the stabbing was an accident because he "had no intent on stabbing William." (*Id.* at 60–61.)

A medical examiner with the Clark County Office of the Coroner testified that the knife penetrated William's heart. (ECF No. 38-25 at 8, 24.) The medical examiner testified that it would not have been possible for William to have suffered the stab wound by "run[ning] into somebody who's just holding a knife" because even though William "could be running very fast and have a lot of momentum, the person holding the knife would not be holding it in the type of power grip that you need to drive a knife with that much force into somebody." (*Id.* at 33.) Contrarily, Dr. Katherine Raven, a forensic pathologist and expert witness for the defense, testified that she reviewed William's autopsy report, the coroner's report, photographs of the knife and autopsy,

3

and Epps's police interview transcript. (ECF No. 38-31 at 143–45.) According to Dr. Raven, William's injury could have been sustained by "charging [with] a sufficient force[ ] into [the] knife . . . being held in a firm grip." (*Id.* at 148.)

### B. Procedural Background

A jury found Epps guilty of second-degree murder with the use of a deadly weapon. (ECF No. 38-40.) Epps was sentenced to 10 years to life for the second-degree murder conviction plus a consecutive term of 8 to 20 years for the deadly weapon enhancement. (*Id.*) Epps appealed, and the Nevada Court of Appeals affirmed. (ECF No. 39-11.) Epps petitioned for review by the Nevada Supreme Court, which also affirmed. (ECF No. 39-25.)

After exhausting his direct appeals, Epps petitioned for state postconviction relief. (ECF No. 39-30.) The state court denied Epps's motion for appointment for counsel, request for an evidentiary hearing, and petition for habeas corpus. (ECF No. 39-38.) Epps appealed, and the Nevada Court of Appeals affirmed. (ECF No. 39-52.)

Epps then commenced this federal habeas action. (ECF No. 1.) This Court granted Epps's request for the appointment of counsel and appointed the Federal Public Defender to represent him. (ECF Nos. 17, 19.) After receiving counsel, Epps filed his counseled Amended Petition. (ECF No. 28.) Respondents filed an Answer, to which Epps filed a Reply. (ECF Nos. 36, 52.)

## II. GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim –

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[3]

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a

---

[3] Epps argues that 28 U.S.C. § 2254 is unconstitutional because it violates the Suspension Clause, fundamental principles of separation of powers, the ban on cruel and unusual punishments, and the guarantee of due process. (ECF No. 28 at 5.) This Court finds that this argument lacks merit. *See Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007) ("The constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute.").

5

strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**III.   DISCUSSION**

    **A.   Ground 1—right to self-representation**

In ground 1, Epps alleges that the trial court violated his right to self-representation. (ECF No. 28 at 6.)

        **1.   Background**

On June 23, 2016, six weeks prior to the start of his trial, Epps filed a *pro se* "motion for 'Faretta' hearing & motion to dismiss counsel." (ECF No. 38-11.) Epps made, *inter alia*, the following allegations regarding his trial counsel: (1) his failure to file meritorious motions regarding the violation of his constitutional rights by law enforcement officers, (2) his failure to test evidence or thoroughly interview the State's witnesses, (3) his failure to address *Brady* violations, and (4) his failure to timely seek out expert witnesses. (*Id.*) On June 29, 2016, Epps's trial counsel filed a motion in response, stating, *inter alia*, (1) Epps had demanded various motions be filed, (2) he had told Epps the motions he wanted filed lacked merit, and (3) Epps wanted to represent himself at trial. (ECF No. 38-12.) A hearing was held on July 19, 2016. (ECF No. 38-14.) The court explained that the purpose of the hearing was Epps's motion "to represent himself on a murder case." (*Id.* at 3.) The trial court denied Epps's motions to represent himself and to remove his trial counsel, explaining that (1) Epps's "request [was] untimely because [he] admitted

in open court that [he could not] be prepared" within thirteen days when the trial was scheduled to start, and (2) the trial had already "been continued so many times." (*Id.* at 11.)

### 2. State court determination

In affirming Epps's judgment of conviction, the Nevada Court of Appeals held:

> Epps claims the district court erred by denying his motion to represent himself. "The Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees a defendant the right to self-representation." *Watson v. State*, 130 Nev. 764, 782, 335 P.3d 157, 170 (2014). However, a district court "may deny a request for self-representation that is untimely, equivocal, or made for the purpose of delay." *Id.* We review the district court's decision to deny a motion for self-representation for an abuse of discretion. *See id.* at 783, 335 P.3d at 171.
> Epps's motion to represent himself was untimely. "If it is clear that the request comes early enough to allow the defendant to prepare for trial without need for a continuance, the request should be deemed timely." *Id.* (quoting *Lyons v. State*, 106 Nev. 438, 446, 796 P.2d 210, 214 (1990)). Epps's trial had been continued six times when he filed his motion to represent himself. He filed the motion approximately one month before the scheduled trial date. And he informed the district court at the hearing on the motion that he would need a continuance if the motion were granted. Considering the timing of Epps's motion, and his assertion he would need a continuance if his motion was granted, we conclude the district court did not abuse its discretion by denying Epps's motion to represent himself.

(ECF No. 39-11 at 2–3.)

Following Epps's petition for supreme court review, the Nevada Supreme Court affirmed as follows:

> Epps argues that the district court abused its discretion in denying his motion for self-representation on the sole basis that it was untimely filed. A district court's order denying a defendant's request to represent himself is reviewed for an abuse of discretion. *Guerrina v. State*, 134 Nev. 338, 341, 419 P.3d 705, 709 (2018); *see also Lyons v. State*, 106 Nev. 438, 445, 796 P.2d 210, 214 (1990), *abrogated in part on other grounds by Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001).
> The United States Supreme Court has held that a defendant in a state criminal trial has the constitutional right to represent himself if he voluntarily and intelligently elects to do. *Faretta*, 422 U.S. 806. However, invoking the right "is not a license to abuse the dignity of the courtroom" or fail "to comply with relevant rules of procedural and substantive law." *Id.* at 834 fn. 46. Nevada has interpreted

7

*Faretta* to allow for the denial of a defendant's right to self-representation when (1) the request is untimely, equivocal, or made solely for the purpose of delay; (2) the defendant abuses the right by disrupting the judicial process or is incompetent to voluntarily and intelligently waive his or her right to counsel; or (3) the case is especially complex and requires assistance of counsel. *Lyons*, 106 Nev. at 443, 769 P.2d at 213.  *Lyons* notes and adopts three different standards used in other jurisdictions regarding timeliness:

> First, if the request is made well before trial, the right to self-representation is timely as a matter of law and may not be denied absent a justification other than timeliness.  Second, if the request is made shortly before or on the day of trial, the court may, in its discretion, deny the request as untimely unless there is reasonable cause to justify the lateness of the request.  Third, if the request is made during trial, the court has a larger measure of discretion to grant or deny the request.

*Id.* at 445, 769 P.2d at 214.

The court further clarified that if "the request comes early enough to allow the defendant to prepare for trial without need for a continuance, the request should be deemed timely." *Id*. at 446, 769 P.2d at 214.  Additionally, a court can deny the request on the ground of untimeliness alone if there is no showing of reasonable cause for the lateness of the request. *Id.*  In a more recent decision, this court reiterated that the timing of the motion is a proper consideration for the district court and that the defendant must demonstrate reasonable cause to excuse a late request. *Guerrina*, 134 Nev. at 342, 419 P.3d at 709-10.  In *Guerrina*, this court determined that the defendant had not demonstrated reasonable cause for the late request because "[h]e pointed to no event that triggered his loss of faith in counsel 8 months after counsel's appointment and 24 days before trial." *Id.* at 342, 419 P.3d at 710.

Epps's motion did not state a cause, reasonable or otherwise, nor did he present a reason at the hearing, for why the motion was brought so shortly before trial that he would not have been able to proceed without a continuance.  The only basis presented was Epps's dissatisfaction with his counsel's investigation and differences over trial strategy.  The burden to show reasonable cause for the untimeliness rests on Epps. *See id.*  The district court provided Epps an opportunity at the motion hearing to demonstrate why his motion should be granted.  Nevertheless, the record does not show reasonable cause for the untimely filing of the motion, and the concerns brought forth by Epps in the motion and at the hearing were not recent events.

We note that the motion was filed six weeks before the trial, but the hearing on the motion occurred approximately two weeks before the scheduled trial date.  However, Epps does not demonstrate that he would not have needed a continuance if the hearing had been scheduled promptly after the motion was filed, and his claimed desire to retain a new expert and conduct additional investigation makes it unlikely a continuance would not have been required.

We conclude there was no abuse of discretion in the district court's denial of the motion and find that it was untimely filed.

(ECF No. 39-25 at 4–7.)

### 3. Standard

The Sixth Amendment guarantees that in all criminal prosecutions a defendant shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI. The Sixth Amendment also guarantees a defendant the right to refuse the assistance of counsel and to represent himself in criminal proceedings. *Faretta v. California*, 422 U.S. 806, 834 (1975). A defendant's choice to proceed *pro se* "must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* (citing *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970)). The Constitution, however, "require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). To invoke this right to proceed without counsel, the defendant's request must be timely. *See United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003); *Avila v. Roe*, 298 F.3d 750, 753 (9th Cir. 2002). A defendant's right to self-representation "is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984); *see also United States v. Knight*, 56 F.4th 1231, 1235 (9th Cir. 2023).

### 4. Analysis

In *Faretta*, the Supreme Court noted that the defendant had asked to proceed *pro se* "weeks before trial" and then held that, "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." 422 U.S. at 836 (emphasis added). When the Court of Appeals for the Ninth Circuit later considered *Faretta*, it viewed the timing element as essential to the Supreme Court's holding. The Ninth Circuit determined that, after *Faretta*, the Supreme Court

had clearly established that a request to proceed *pro se* is timely if made "weeks before trial."[4] *Moore v. Calderon*, 108 F.3d 261, 261 (9th Cir. 1997), *overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). Thus, the *Faretta* language describing Faretta's request to represent himself as having been made "weeks before trial" is part of the holding of the Supreme Court and is "clearly established Federal law, as determined by the Supreme Court of the United States" under 28 U.S.C. § 2254(d)(1). *See Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005) (explaining that *Faretta* "may be read to require a court to grant a *Faretta* request when the request occurs 'weeks before trial'"); *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) ("*Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely. It indicates only that a motion for self-representation made 'weeks before trial' is timely."); *Burton v. Davis*, 816 F.3d 1132, 1141 (9th Cir. 2016) ("[H]ad [the petitioner] asked to represent himself weeks before trial and had the trial court denied his request as untimely, we would conclude that the denial was contrary to *Faretta* and would issue the writ on that basis.").

    Here, Epps filed a *pro se* "motion for 'Faretta' hearing" six weeks before the start of his trial. (ECF No. 38-11.) Less than a week later—and still five weeks before the start of Epps's trial—Epps's trial counsel filed a motion clearly indicating that Epps wanted to represent himself at trial. (ECF No. 38-12.) Because these requests for Epps to represent himself were made "weeks before trial," the requests were timely under *Faretta*. Although the Nevada Supreme Court correctly identified *Faretta* as the governing principle for the issue at hand, the Nevada Supreme Court's finding that Epps's motion to represent himself was untimely is contrary to *Faretta*. Accordingly, this Court finds that the Nevada Supreme Court's application of *Faretta* to Epps's

---

[4] This Court acknowledges that *Moore* is not binding precedent, but *Moore* provides guidance in determining what is clearly established federal law under *Faretta*. *See Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir.1999); *Bruce v. Terhune*, 376 F.3d 950, 956 (9th Cir. 2004).

case was objectively unreasonable. *See White v. Woodall*, 572 U.S. 415, 419 (2014) (explaining that an unreasonable application of clearly established federal law must be "objectively unreasonable, not merely wrong" (internal quotation marks omitted)); *see also Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (explaining that a state court's decision is an "unreasonable application" of federal law if it "identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" (internal quotation marks omitted)).

Ground 1 will be reviewed *de novo*. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires"); *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) ("[W]here the analysis on federal habeas . . . results in the conclusion that § 2254(d)(1) is satisfied, then federal habeas courts must review the substantive constitutionality of the state custody de novo."). Reviewing Ground 1 *de* novo, Epps's request to represent himself was timely under *Faretta*. Because the state court denied Epps's request to represent himself based on timeliness alone, the state court deprived Epps of his right to self-representation, rendering his trial fundamentally unfair. This is a structural error. Epps is granted federal habeas relief for ground 1.[5]

---

[5] Because this Court grants Epps relief based on the timeliness of his request under *Faretta*, it is not necessary to reach the issue of the reasons behind his request. This Court nonetheless notes that, pursuant to *Burton*, the Nevada Supreme Court appears to have engaged in improper burden-shifting when it explained that Epps would have to demonstrate reasonable cause to excuse his late request. Under federal law, if a defendant's request to represent himself or herself is untimely, the court must determine whether *the prosecution* can demonstrate that the defendant's request was made for the purpose of delay. Contrarily, under Nevada law, if a defendant's request to represent himself or herself is untimely, the court must determine whether *the defendant* can demonstrate cause for the lateness of his or her request. Accordingly, this Court notes that the Nevada Supreme Court, after finding that Epps's request was untimely, appears to have employed a burden of proof standard that is contrary to federal law. *See Burton*, 816 F.3d at 1153 (explaining that "the burden

### B.     Ground 2—ineffective assistance of counsel[6]

In ground 2, Epps alleges that he received ineffective assistance of trial counsel when his trial counsel failed to call Nicholas Farmer to testify. (ECF No. 28 at 9.)

#### 1.     Background

On July 18, 2016, Epps's trial counsel and his investigator interviewed Nicholas E. Farmer while he was in custody. (ECF No. 39-32 at 39.) According to that interview, Farmer could testify to the following information:

> Farmer has firsthand knowledge that Will Fetting (Victim) and Lonnie (last name unknown, also known as "Slim") made a deal that did not work as planned. The deal had to do with a stolen vehicle and a quarter ounce of dope. Will was to steal a car for Lonnie and trade it for a quarter ounce of dope. Lonnie took the car and there was no dope. This caused a problem between Will and Lonnie.
> Lonnie is Larry Hill's nephew. Around this same time, Larry Hill got out of prison and took up Lonnie's beef with Will Fetting.
> A few days before Will was killed, Farmer witnessed Larry Hill chasing Will down the street.
> The same day Will Fetting (victim) was killed, Farmer was at Doggie's (Hidalgo Garcia) house . . . . Will was there too. Epps and Larry Hill arrived in Hill's vehicle. At first, Larry did not see Will, but when Larry did, Larry began cursing at Will. Then Larry went after Will, but Doggie put a stop to it, before anything happened. Will left the house before Epps, Hill and Farmer.
> When Larry and Epps left Doggie's house, Farmer left with them. They dropped Farmer off about one block away from where Will resided.

---

is on the State, not the defendant, to make 'an affirmative showing' that a defendant's pre-empanelment *Faretta* request is made for the purpose of delaying trial" (citing *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982))). Furthermore, because the Nevada Supreme Court found that Epps did not show reasonable cause for the untimely filing of the motion, rejecting Epps's explanation that he wanted to represent himself because he was dissatisfied with his counsel's investigation, this Court reminds the Nevada Supreme Court that "[a] desire to have one's case fully investigated is clearly a good reason for wanting to delay a capital murder trial." *Id.* at 1160. Indeed, "[t]here is a very important distinction between wanting to delay trial for legitimate reasons and wanting to delay trial for the purpose of securing delay." *Id.* at 1151 (citing *Fritz*, 682 F.2d at 784).

[6] As a practical matter, it may be unnecessary to discuss ground 2 given that this Court has already concluded that Epps is entitled to federal habeas relief in ground 1, which warrants the same relief as is requested in ground 2—a new trial. This Court nonetheless also discusses ground 2 in an abundance of caution.

12

> A short time after Hill and Epps dropped off Farmer, he and his wife and another guy were driving down the block when Farmer saw flashing lights, cop cars and the street closed off in from of where Will resided. It was then Farmer learned that Will was killed.

(*Id.*)

### 2. State court determination

In affirming the denial of Epps's state habeas petition, the Nevada Court of Appeals held as follows:

> Epps claimed counsel was ineffective for failing to call a witness to testify that Epps did not have a problem with the victim prior to the stabbing. [FN1] This witness was not present during the fight and stabbing. Epps argued this testimony would have supported his self-defense claim. At trial Epps testified he went to the victim's home because the victim owed his $200. He also testified the stabbing was an accident. Therefore, had this witness testified, it would have contradicted Epps's own testimony, and because Epps did not claim self-defense at trial, the witness's testimony would not have been helpful in that respect. Thus, Epps failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel called the witness to testify. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 39-52 at 4.)

### 3. Standard

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the

1  wide range of reasonable professional assistance." *Id.* at 689.  The petitioner's burden is to show
2  "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed
3  the defendant by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under
4  *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable
5  effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must be "so serious as to
6  deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

7  Where a state district court previously adjudicated the claim of ineffective assistance of
8  counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult.
9  *See Richter*, 562 U.S. at 104–05.  In *Richter*, the United States Supreme Court clarified that
10 *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is
11 doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When
12 a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and
13 *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard
14 as doubly deferential.") (internal quotation marks omitted).  The Supreme Court further clarified
15 that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.
16 The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s
17 deferential standard." *Richter*, 562 U.S. at 105.

18  **4.     Analysis**

19  Although Farmer would have allegedly testified that it was Hill, not Epps, who had a
20 problem with William, which would have supported Epps's defense that his stabbing of William
21 was not intentional, the Nevada Court of Appeals reasonably determined that Epps failed to
22 demonstrate that his trial counsel acted deficiently.  In fact, because Epps's trial counsel personally
23 interviewed Farmer with his investigator before deciding not to call him as a witness, deference is

owed to Epps's trial counsel's decision. *See Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) (explaining that the court would "be inclined to defer to counsel's judgment if they had made the decision not to present the three witnesses after interviewing them in person" because "[f]ew decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial"). Epps fails to demonstrate that deference is not owed.

Even if this Court were to find deficiency on the part of Epps's trial counsel, which it does not do, the Nevada Court of Appeals reasonably determined that Epps failed to demonstrate prejudice. Epps contends that Farmer's testimony would have supported a manslaughter verdict over a second-degree murder verdict. (ECF No. 52 at 15.) But even if the jury believed Farmer's testimony that Epps bore no malice towards William on the day leading up to the murder, Farmer was not present at the killing and could not testify to Epps's malice—or lack thereof—at the time of the murder. Rather, because Epps testified that William owed him money, he and Hill pursued William, and he brought a knife to this pursuit of William, it is mere conjecture that—even in light of Farmer's testimony—the jury would not have found that Epps acted with the malice necessary to support a second-degree murder conviction. (*See* ECF No. 38-33 at 7 (defining malice aforethought as "aris[ing] from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief or with reckless disregard of consequences and social duty") and at 8 (explaining that "[m]alice may be implied . . . when all the circumstances of the killing show an abandoned and malignant heart").) Conjecture is not enough to establish prejudice under *Strickland*. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019).

In sum, because the Nevada Court of Appeals determined that Epps failed to demonstrate that his trial counsel acted deficiently or resulting prejudice constituted an objectively reasonable

application of *Strickland*'s performance and prejudice prongs, Epps is not entitled to federal habeas relief on ground 2.

## IV.    CONCLUSION[7]

**IT IS THEREFORE ORDERED** that the Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 28) is granted as to ground 1. Petitioner James Epps's judgment of conviction filed on October 12, 2016, in case number C285595-1, in the Eighth Judicial District Court for the State of Nevada is vacated. Within 180 days[8] of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this Court's judgment, if affirmed, or (2) the expiration for seeking such appeal or review, the state court must—consistent with this order—commence jury selection regarding the State of Nevada's amended information filed on April 26, 2013.

**IT IS FURTHER ORDERED** that, to the extent necessary, a certificate of appealability is denied for ground 2.

**IT IS FURTHER ORDERED** that the Clerk of Court (1) substitute Ronald Oliver as a respondent for Respondent Director Nevada Dept. of Corrections, (2) enter judgment, (3) provide a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court for the State of Nevada in connection with that court's case number C285595-1, and (4) close this case.

Dated:   March 6, 2024

_____
Gloria M. Navarro, Judge
United States District Court

---

[7] Epps requests that this Court conduct an evidentiary hearing. (ECF No. 28 at 12.) This Court declines to do so because it is able to decide the Petition on the pleadings.

[8] Reasonable requests for modification of this time may be made by either party.

16